IN THE UNITED STASTES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 20-2161-JWB |
| CHARTER COMMUNICATIONS, INC. et al., | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM AND ORDER**

This matter comes before the court on the following motions: Defendants Craig Cowden and Paul Woelk's motion to dismiss (Doc. 23); Defendants Charter Communications, Inc. ("Charter"), Bright House Networks, LLC ("Bright House"), and Time Warner Cable LLC's ("TWC") motion to dismiss (Doc. 25); and Plaintiff Sprint Communications Company L.P.'s ("Sprint") motion to reassign case (Doc. 36). The motions have been fully briefed and the court is prepared to rule. (Docs. 24, 27, 40, 41, 42, 43, 48, 49, 51, 52.) For the reasons stated herein, Defendants' motions are DENIED and Sprint's motion (Doc. 36) is DENIED.

### I.      Facts and Prior Litigation History

Sprint filed this action in the District Court of Johnson County, Kansas, alleging claims of trade secret misappropriation against all Defendants. Sprint's amended complaint additionally raised a claim of breach of contract against Defendant Woelk. The facts set forth herein are taken from the allegations in the amended complaint.[1] (Doc. 1, Exh. 2, Am. Pet.)

---

[1] Because this action was originally filed in state court, the complaint is titled a petition. The court will refer to the first amended petition as the amended complaint throughout this order.

Plaintiff Sprint alleges that it developed Voice-over-Packet ("VOP") technologies "to leverage the efficiencies of packet-based networks to make telephone calls to and from the" public switched telephone network.  (*Id.* at 12.)  This technology includes voice over internet protocol ("VoIP").  This technology and related developments resulted in hundreds of patents.  Sprint also developed trade secrets related to both technical and financial data.  The amended complaint defines Sprint's trade secrets as follows:

> As used throughout this Petition, the term "Sprint's HC Trade Secrets" includes without limitation any and all information relating to: Sprint technical information regarding Sprint's VoIP and other packet-based network designs, peering network designs, PJN network designs, and Ethernet networks; and Sprint financial information including but not limited to specific savings, cost, and profit calculations, business plans, and other financial information related to any current or future Sprint network, access arrangements or other business opportunities.

(*Id.* at 4, n. 3.)

Sprint began offering VoIP services to cable companies in the 2000s.  In 2003, Sprint began supplying TWC with VoIP wholesale phone services.  At that time, both Defendants Cowden and Woelk were employed by Sprint.  Cowden initially joined Sprint in 1993.  In 2006, he was a vice president in Sprint's Cable Interconnection Solutions group and had decision-making authority regarding Sprint's VoIP network infrastructure.  (*Id.* at 13.)  Woelk joined Sprint in 1999.  In late 2007, he became a senior manager responsible for business development.  (*Id.* at 14.)  Both Cowden and Woelk signed employment agreements regarding Sprint's proprietary information in 2004 and 1999, respectively.  (*Id.* at 26-27.)  The agreements stated that Sprint's proprietary information included all non-public information that was obtained, developed, or produced for or by Sprint.  In those agreements, Cowden and Woelk agreed to keep the proprietary information confidential and that the information would not be disclosed or published without authorization by Sprint.  (*Id.*)  Additionally, in 2009, Woelk executed a general release agreement upon his

separation with Sprint.  He agreed not to disclose Sprint's proprietary or confidential information. (*Id.* at 28.)

Sprint has alleged that it has several policies regarding confidential and trade secret information.  Sprint required employees to use physical and electronic resources, such as locked cabinets, shredders, and secure passwords, to secure company information.  Sprint's Code of Conduct required employees to keep proprietary information confidential.  (*Id.* at 28-29.)

In 2008, TWC was Sprint's largest VoIP wholesale customer and was "owned by the same entity as Bright House."  (*Id.* at 15.)  In late 2008 and/or early 2009, Bright House hired Cowden and Woelk.  Sprint alleges that they were hired because of their knowledge of Sprint's trade secrets regarding Sprint's VoIP network.  (*Id.*)  In November 2008, Cowden allegedly met with Bright House while still employed with Sprint to discuss Sprint's VoIP network and a new position at Bright House.  TWC and Bright House then met in early December so that Bright House could share knowledge with TWC so that TWC could change the deal it had with Sprint.  TWC also developed a "Sprint Service Delivery Cost Assessment" which was an evaluation of what TWC believed to be Sprint's internal cost for VoIP services.  At this time, Cowden had access to Sprint's pricing, costs, and profits.  Bright House executives allegedly asked Cowden for information and instructed him to prepare a presentation addressing their questions which was then presented to Bright House in December.  Cowden allegedly created the presentation which included trade secrets such as specific financial information about the VoIP network, order management, offerings, and specific costs.  It also included proprietary network architecture models from confidential documents.  Cowden then sent the presentation from his Sprint e-mail account to his personal e-mail account.  Sprint alleges upon information and belief that Cowden then forwarded that presentation to Bright House.  Sprint alleges that Bright House understood that this

information was non-public, trade secret information and was sought by both Bright House and TWC.  (*Id.* at 15-18.)

Cowden allegedly sent additional trade secrets to Bright House and TWC while he continued his employment with Sprint.  On January 8 and 9, 2009, Sprint had a meeting with TWC.  That meeting was intended to assist Sprint in retaining TWC as a customer.  Although Sprint requested that Cowden attend the meeting, he declined to attend.  Instead, Sprint alleges that Cowden encouraged Woelk to leave Sprint and join him at Bright House.  On January 7, Bright House requested that Woelk develop an exemplary business case.  Allegedly, Woelk developed a presentation for Bright House using Sprint's trade secrets such as technical and business strategy information.  (*Id.* at 18-19.)

On January 12, 2009, Cowden informed Sprint that he would be leaving Sprint for Bright House.  Cowden did not disclose to Sprint that he had been providing Sprint's confidential and proprietary information to Bright House.  On January 22, Cowden had Woelk send Woelk's Bright House presentation and the documents used to create the presentation to Cowden's personal e-mail.  Cowden joined Bright House in late January as vice president and general manager.  Cowden allegedly continued to access his Sprint e-mail after his employment ended.  Cowden forwarded at least one email containing Sprint's trade secrets from his personal email account to his Bright House account.  In February, Woelk left Sprint for Bright House.  (*Id.* at 19-20.)

Upon his departure, Woelk allegedly removed over 3,500 Sprint files from his Sprint computer.  These documents included the following trade secrets:

> (1) technical information, such as concept papers, call flows, and technical designs for Sprint's current and/or future VoIP networks, VoIP Peering networks, PIN network, various Wireless networks, and Ethernet networks; (2) financial information, such as presentations. spreadsheets, memorandums, and other documents with Sprint's internal business strategies, detailed financial forecasts, potential product development, competitive analysis, pricing information, cost,

detailed revenues, profits, detailed OIBDA calculations, negotiation strategies, operation reviews, business cases, business pitches, prospectus, opportunities, joint initiatives. financial summaries, executive budgets, and compensations; and (3) agreements, such as contractual arrangements relating to Sprint's VoIP offerings.

(*Id*. at 21.)

On March 20, 2009, Woelk signed a general release agreement with Sprint in which he agreed "to make no disclosure or use whatsoever of any proprietary or confidential information, data, developments or trade secrets belonging to Sprint." *Id.* The agreement also requires Woelk to cooperate with Sprint in the prosecution of any legal matter involving any other employee of Sprint or any other matter that arose during his employment. (*Id.* at 36.)

In 2009, Bright House and Cowden allegedly used Sprint's trade secrets to encourage TWC to stop using Sprint's VoIP wholesale service. In April 2009, TWC represented that Bright House could potentially provide VoIP services for TWC if TWC ceased purchasing those services from Sprint. (*Id.* at 22-23.) Sprint further alleges that TWC acquired Sprint's trade secrets, including financial information, and used that trade secret information to drive down the price Sprint charged for its VoIP wholesale services. TWC ultimately decided to offer those services to their customers without Sprint's assistance. On March 11, 2010, TWC confirmed that it would phase out its VoIP relationship with Sprint. (*Id.* at 23.) Cowden was promoted later that year.

Sprint alleges that Bright House used Sprint's trade secrets to develop its own offerings and short-cut the development process. Sprint alleges that Bright House, Woelk, and Cowden continued to possess Sprint's trade secrets throughout their employment. Around March 2015, Charter acquired Bright House. At some unknown date, Sprint alleges that Woelk and Bright House disclosed and transferred the 3,500 Sprint files, including documents containing Sprint's trade secrets, to Charter and they were stored in a Charter computer used by Woelk in a folder

titled "Sprint My Documents." (*Id.* at 24-25.)  On or about May 18, 2016, both Cowden and Woelk were listed as having roles at Charter in publicly filed documents.

Sprint alleges that it did not learn about Defendants' misappropriation and use of its trade secrets until September 2019.  In August 2019, Charter's counsel notified Sprint's counsel that there were Sprint documents on Charter's business computers.  Charter delayed providing the documents to Sprint for several weeks.  (*Id.* at 22.)

Sprint asserts a claim of trade secret misappropriation against Defendants under Kansas law.  Sprint alleges that its trade secrets have independent economic value because they are not generally known to others or readily ascertainable by proper means.  Additionally, the documents are of significant value to Sprint's competitors, customers, and potential customers.  Sprint further alleges that many of the documents contain designations stating that the document is "confidential" or "proprietary" or for "internal use only." (*Id.* at 32.)  Sprint also requires employees, contractors, vendors, and other third parties to sign confidentiality agreements before confidential or proprietary trade secret information is disclosed.  Sprint alleges that Bright House knew or should have known that it was acquiring Sprint's trade secrets by improper means because it specifically asked Cowden and Woelk to obtain such information and some of the documents stated "Sprint Nextel Confidential."  Sprint further alleges that Charter and TWC should have known that it was acquiring Sprint trade secret information by improper means because the documents contained labels including "Sprint Confidentiality, Proprietary, Internal-Use-Only, and Privileged branding." (*Id.* at 33-34.)

Sprint has also asserted a claim of breach of contract against Woelk.  Sprint alleges that Woelk has breached the release agreement by failing to cooperate with Sprint in its litigation

against Charter, Bright House, Cowden, and others, that was filed in the District of Delaware in 2017.  (*Id.* at 36-37.)

Defendants have all moved to dismiss.  Defendants assert that the trade secret claim is barred by the statute of limitations.  Alternatively, Defendants argue that Sprint has failed to state a claim.  Woelk argues that Sprint's breach of contract claim against him fails to state a claim. Sprint has moved to transfer this action to Judge Lungstrum.

Other Litigation involving the Parties

On December 1, 2017, Sprint filed an action against Charter and Bright House and other related companies in the District of Delaware.  Case No. 17-1734 (D. Del.).  That action alleges patent infringement and involves matters which arose during Woelk's employment at Sprint.  On August 29, 2019, Sprint served a third-party subpoena to Woelk, seeking certain documents.  On September 25, Woelk responded and allegedly refused to cooperate with Sprint's prosecution in the Delaware case.  Sprint's counsel had several calls with Woelk's counsel in which Sprint continued to request cooperation and documents from Woelk.  Woelk refused to cooperate with the requests.  (Doc. 1, Exh. 2, Am. Pet. at 36-37.)

Sprint has also previously filed several actions in this court against various cable companies, including a suit against TWC.  *Sprint Comms. Co., L.P. v. Time Warner Cable Inc. et. al*, Case No. 11-cv-02686-JWL (D. Kan, filed Dec. 19, 2011); *Sprint v. Comcast Cable Commc'ns Co. L.P., et al.*, No. 2:11-cv-02684-JWL; *Sprint v. Cable One, Inc*., No. 2:11-cv-02685-JWL. These three cases concerned the misappropriation of Sprint's patents.  All three cases were presided over by Judge Lungstrum.  Sprint also had five other cases regarding its intellectual property that were all presided over by Judge Lungstrum.  (Doc. 36 at 2-3.)  Although TWC was

a party to one action, none of the remaining Defendants were parties to any of the actions regarding Sprint's intellectual property.

Defendants' Exhibits

The Charter Defendants (Charter, Bright House, and TWC) have attached almost 300 pages of exhibits to their motion to dismiss.  (Doc. 26.)  These exhibits include the court records from Case No. 11-cv-02686-JWL and *Sprint Comms. Co., LP v. Charter Comms., Inc. et al.,* Case No. 19-mc-00129 (D. Colo., filed Dec. 17, 2019).  Defendants have also submitted the employee confidentiality agreements signed by Woelk and Cowden and Woelk's release agreement. Defendants urge the court to consider the documents in ruling on their motions to dismiss and argue that the court may take judicial notice of the documents that were part of the court's records. Defendants assert that these documents affirmatively show that Sprint had knowledge of the facts regarding its claims long before February 20, 2017, which was three years prior to the filing of this suit.  Sprint objects to the court's consideration of the judicial records on the basis that the discovery of the information regarding the misappropriation of trade secrets is in dispute and, therefore, not appropriate for a motion to dismiss.

On a motion to dismiss, the court may consider the complaint itself and any attached exhibits or any documents incorporated by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) ("[C]ourts have broad discretion in determining whether or not to accept materials beyond the pleadings."); *GFF Corp. v. Assoc. Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384–85 (10th Cir. 1997).  A court also "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.*  With respect to the confidentiality agreements and the release agreements, the court finds that these exhibits have been

8

incorporated into the amended complaint by reference.  Sprint's amended complaint quotes portions of these agreements.  Moreover, Sprint does not challenge the authenticity of the agreements that are attached to Defendants' motion.

Turning to the remainder of the exhibits, which include depositions, motions, and trial testimony, among other items, Defendants argue that these are documents as to which the court may take judicial notice.  In ruling on a Rule 12(b)(6) motion, a court may consider its own files and records only "to show their contents" and "not to prove the truth of matters asserted therein." *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020).  Typically, on a motion to dismiss, courts take notice of what the court did in a prior case as evidence of prior judicial acts.  *Id.*  The records submitted here are not offered to show what this court did in Sprint's prior action.  Rather, for example, Defendants offer a motion for a protective order in support of its position that Sprint had knowledge of the misappropriation of their trade secrets in 2014.  (Doc. 27 at 7.)  In that motion, Sprint stated that Cowden had access and exposure to Sprint's proprietary information.  Defendants also want the court to consider a reply brief regarding the motion for a protective order that stated that Cowden was exposed to "confidential and trade secret information relating to wholesale voice services provided to Time Warner."  (*Id.* at 8.)  Defendants also offer a Sprint subpoena request that was issued to Cowden in 2014.  That request asked for any information and documents that were provided to Bright House and TWC.  (*Id.*)  Defendants suggest that such a request, along with the other materials, show that Sprint had knowledge of the misappropriation or, at the least, had suspicions of misappropriation and had a duty to investigate.  Sprint objects to the court considering these documents at the motion to dismiss stage arguing that there is a factual dispute as to when Sprint learned of the misappropriation.

While the court may dismiss an action pursuant to a 12(b)(6) motion on the basis of an affirmative defense such as the statute of limitations, it must be "clear" from the dates given in the complaint "that the right sued upon has been extinguished." *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir.1980); *see also, Solomon v. HSBC Mortgage Corp*., 395 F. App'x. 494, 497 (10th Cir. 2010). Even if the court considered the documents submitted by Defendants, they have not shown that it was "clear" that Sprint had knowledge of misappropriation by a certain date. To be successful on their motion to dismiss based on the affirmative defense, Defendants must show that it is clear from the face of the amended complaint and the matters as to which the court may take judicial notice that Sprint's claim is barred by the statute of limitations. *Id.*

Such determination is more appropriate for summary judgment. At this stage, the court will consider only the allegations in the complaint.

## II.   Standard

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Sprint. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla*., 510 F.3d 1196, 1200 (10th Cir. 2007).

## III.   Analysis

### A.   Trade Secret Misappropriation

#### i.   Statute of Limitations

Defendants move for dismissal of Plaintiff's claim under the Kansas Uniform Trade Secrets Act ("KUTSA") on the basis that it is barred by the statute of limitations. Under the KUTSA, "an action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." K.S.A. § 60-3325.

Defendants' briefs make arguments based on documents as to which the court has declined to take judicial notice. A review of the amended complaint shows that Sprint has alleged that it learned about the misappropriation of its trade secrets in September 2019. That would make this action timely under the statute. Defendants argue that Sprint should have discovered the misappropriation of the trade secrets due to Cowden and Woelk's knowledge of those trade secrets and their departure to Bright House and the subsequent end of TWC's relationship with Sprint. Again, Defendants cite to several exhibits that the court has not considered. Although the amended complaint alleges that Cowden and Woelk had substantial knowledge of Sprint's trade secrets, both Defendants signed agreements in which they agreed not disclose those secrets. There is simply nothing in the amended complaint that shows that it was "clear" that Sprint's claim is barred by the statute of limitations. The arguments raised by Defendants are more appropriate for summary judgment. At this stage, the court is required to view the amended complaint in a light most favorable to Sprint.

Sprint has sufficiently alleged that it did not know about the misappropriation until only months prior to the filing of this claim. Therefore, Defendants' motions to dismiss the KUTSA claim on the basis of statute of limitations is denied.

      **ii.**    **Plausible Claim**

Defendants move to dismiss Sprint's KUTSA claim on the basis that it fails to state a claim. Defendants argue that Sprint has failed to identify its trade secrets with specificity and distinguish those from patented technology, failed to plead that it reasonably protected its trade secrets, and failed to plead an injury.  The court will address the arguments in turn.

To establish a claim under the KUTSA, Sprint must show: "(1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or should have known the trade secret was acquired by improper means." *API Americas Inc. v. Miller*, 380 F. Supp. 3d 1141, 1148 (D. Kan. 2019) (citing *Chris-Leef Gen. Agency, Inc. v. Rising Star Ins. Inc*., 2011 WL 5039141, at *4 (D. Kan. 2011) (listing elements of KUTSA misappropriation claim (citing K.S.A. § 60-3320)). The KUTSA defines a trade secret as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
> (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
> (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

K.S.A. § 60–3320(4).

Under Kansas law, Sprint must describe "the subject matter of their trade secrets in sufficient detail to establish each element of a trade secret." *Bradbury Co. v. Teissier-duCros*, 413 F. Supp. 2d 1209, 1222 (D. Kan. 2006). The existence of a trade secret is typically a question for the trier of fact. *Id.* at 1221.  A plaintiff must also define "its trade secrets with the precision and particularity necessary to separate it from the general skill and knowledge possessed by others." *Id.* at 1222 (citing *BioCore, Inc. v. Khosrowshahi*, 96 F.Supp.2d 1221, 1231 (D. Kan. 2000)).

With respect to the identification of its trade secrets, the amended complaint identified

Sprint's trade secrets as:

> any and all information relating to: Sprint technical information regarding Sprint's VoIP and other packet-based network designs, peering network designs, PJN network designs, and Ethernet networks; and Sprint financial information including but not limited to specific savings, cost, and profit calculations, business plans, and other financial information related to any current or future Sprint network, access arrangements or other business opportunities.

(Doc. 1, Exh. 2, Am. Pet. at 4, n. 3.)

The amended complaint makes further allegations regarding its trade secrets.  Sprint alleges

that its trade secrets include the following information that was included in the 3,500 documents

allegedly removed by Woelk:

> (1) technical information, such as concept papers, call flows, and technical designs for Sprint's current and/or future VoIP networks, VoIP Peering networks, PIN network, various Wireless networks, and Ethernet networks; (2) financial information, such as presentations. spreadsheets, memorandums, and other documents with Sprint's internal business strategies, detailed financial forecasts, potential product development, competitive analysis, pricing information, cost, detailed revenues, profits, detailed OIBDA calculations, negotiation strategies, operation reviews, business cases, business pitches, prospectus, opportunities, joint initiatives. financial summaries, executive budgets, and compensations; and (3) agreements, such as contractual arrangements relating to Sprint's VoIP offerings.

(*Id*. at 21.)

The amended complaint also alleges that Cowden and Woelk's presentations to Bright

House contained proprietary information.  Cowden's December 2008 presentation to Bright House

had specific financial information and costs which included a confidential and proprietary "cable

order management" analysis.  (*Id*. at 16-17.)  This was labeled as an internal document and

proprietary.  Woelk's presentation included technical and business strategy information regarding

providing telephony services to a medium-sized private company and several pages were branded

confidential.  (*Id.* at 18-19.)  Sprint further alleges that its trade secrets were not disclosed in "any published Sprint patent or patent application."  (*Id*. at 35.)

Defendants assert that Sprint's allegations fail to state a claim because Sprint has not pleaded its trade secrets with the required particularity and failed to distinguish its patented technology.  The Charter Defendants cite three Kansas cases in its argument for the proposition that the trade secrets were not plead with the required specificity.  But, as pointed out by Sprint, two of those cases were decided on summary judgment.  *See Dodson Int'l Parts, Inc. v. Altendorf*, 347 F. Supp. 2d 997, 1010 (D. Kan. 2004), *modified on reconsideration*, No. 00-4134SAC, 2005 WL 475363 (D. Kan. Feb. 1, 2005) (summary judgment); *Freebird Commc'ns, Inc. Profit Sharing Plan v. Roberts*, No. 2:18-CV-02026-HLT, 2019 WL 5964583, at *4 (D. Kan. Nov. 13, 2019). Cowden and Woelk cite to one District of Kansas case in support of this argument, *BioCore, Inc. v. Khosrowshahi*, 96 F. Supp. 2d 1221, 1223 (D. Kan. 2000), *rev'd and remanded*, 80 F. App'x 619 (10th Cir. 2003).  That case, however, had been tried by a jury.  *Id.*

The Charter Defendants also cite to *Bradbury Co. v. Teissier-DuCros*, No. 03-1391-WEB, 2005 WL 2972323, at *4 (D. Kan. Nov. 3, 2005).  In that case, the court was addressing a motion to compel and does not directly address the issue before this court.  Defendants also cite cases from outside this district, but the court does not find those cases persuasive.  The Charter Defendants cite to a case from the Southern District of New York for the proposition that a "vague and indefinite description of purported trade secret information cannot be granted protection as a trade secret."  (Doc. 27 at 23) (citing *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.,* 1 F. Supp. 3d 224, 258 (S.D.N.Y. 2014), *aff'd sub nom. Big Vision Private Ltd. v. E.I. du Pont de Nemours & Co*., 610 F. App'x 69 (2d Cir. 2015).  While accurately stating the law, that case was also decided on summary judgment.

In a case from the Central District of California, the court dismissed the action after determining the amended complaint had not sufficiently described the trade secrets. *Jun-En Enter. v. Lin*, No. CV 12-2734 PSG (SSX), 2013 WL 12126115, at *2 (C.D. Cal. June 17, 2013) (cited by the Charter Defendants in Doc. 27 at 24). The plaintiff had initially alleged "proprietary information" in describing its trade secrets. *Id.* In the amended complaint, the plaintiff described the proprietary information as "information regarding potential customers and business leads." *Id.* The court found that the plaintiff had not stated a plausible claim because the amended complaint did not "explain why the vague category of information regarding potential customers and business leads was proprietary." *Id.* Notably, the court stated that a plaintiff is "not required to 'spell out the details of the trade secret,' [but] 'must *minimally provide reasonable notice of the issues* which must be met at the time of trial and [ ] provide reasonable guidance in ascertaining the scope of appropriate discovery.'" *Id.* (citation omitted) (emphasis supplied).

In this case, although there are some descriptions of Sprint's trade secrets that could be categorized as overly broad or vague if viewed in isolation, viewing the amended complaint in a light most favorable to Sprint, it does specifically describe several categories of information that would fall in the definition of trade secrets. The amended complaint discusses two different presentations in 2008 and 2009 that involved confidential and proprietary information regarding Sprint's costs and business strategies; it also specifies that the 3,500 pages of documents that were allegedly on Charter's computers included concept papers and technical designs for their current networks, financial information that included detailed financial forecasts and potential product development, and detailed OIBDA calculations. The amended complaint further alleges that the information contained in these documents was confidential and proprietary and trade secrets belonging to Sprint. At this stage of the proceedings, this is sufficient to state a claim. *Nueterra*

15

*Capital Advisors, LLC v. Leiker*, No. 17-2501-DDC-JPO, 2018 WL 1316940, at *5 (D. Kan. Mar. 14, 2018) (finding sufficient allegations that trade secrets included the "Triple Aim Business Plan, the Triple Aim tradename, logos, and marks, and other documents, logos, marks, designs, strategies, and ideas associated with the same.")

Defendants also argue that Sprint has not sufficiently distinguished its trade secrets from its patents. Sprint, however, alleged that the misappropriated trade secrets do not include patented information or information that is publicly available. At this stage, the court finds that Sprint has sufficiently alleged that its trade secrets are not publicly available.

Defendants further argue that Sprint has failed to allege that it reasonably protected its trade secrets. Sprint has alleged that it has employment policies regarding confidential information, requires the execution of confidentiality agreements, labels documents as confidential, and uses security systems for documents. Defendants contend that these security measures are not sufficient especially because Sprint admits in its amended complaint that Cowden had access to his email after his departure for some time. (Doc. 24 at 17.) Although that fact may indicate a lapse in a security procedure, Defendants fail to cite any authority that one individual's access to his email account results in a finding that a company failed to reasonably protect its trade secrets. "Kansas law does not require the holder of a trade secret to maintain its complete secrecy; rather Kansas law requires merely that the holder of a trade secret exercise reasonable efforts under the circumstances to maintain its secrecy." *Bradbury Co. v. Teissier-duCros*, 413 F. Supp. 2d 1209, 1222 (D. Kan. 2006) (quoting *Fireworks Spectacular, Inc. v. Premier Pyrotechnics, Inc*., 107 F.Supp.2d 1307, 1310 (D. Kan. 2000)). Sprint has sufficiently alleged that it exercised reasonable efforts to maintain secrecy.

Finally, Defendants argue that Sprint has not stated an injury because it failed to "attempt to identify any specific information that Bright House actually disclosed to TWC, or that was used in any way to facilitate its decision to provide VoIP services without renewing its agreement with Sprint." (Doc. 27 at 26-27.) Sprint has alleged that Bright House used its trade secrets, including the trade secret financial information, to encourage TWC to stop using Sprint's VoIP wholesale service. (Doc. 1, Exh. 2, Am. Pet. at 22.) Sprint further alleged that TWC then acquired those trade secrets and used them to drive down the price and ultimately end its relationship with Sprint. Sprint has further alleged that Bright House used the trade secrets to short-cut the development process of its VoIP network "and reach Sprint's level of offerings in a fraction of the time." *Id.* at 24. Sprint alleges that it has suffered damages from the misappropriation of its trade secrets, including lost profits. This is sufficient to state a plausible injury. K.S.A. 60-3322.

Defendants also argue that Sprint has failed to specifically allege which trade secrets were used, who provided the information to TWC, when and how it was provided, and specifically what the information consisted of. (Doc. 27 at 27.) Although Sprint must allege its trade secrets with some specificity as discussed herein, there is no requirement that this claim requires a heightened pleading standard as Defendants suggest.

Defendants' motions to dismiss Sprint's KUTSA claim on the basis that it fails to state a claim is denied.

### B. Breach of Contract

Sprint alleges that Woelk breached the release agreement by refusing to cooperate regarding Sprint's Delaware action against Charter and Bright House. Woelk moves to dismiss this claim on the basis that Sprint has failed to allege a breach of the agreement. To state a claim for breach of contract under Kansas law, Plaintiffs must show: "(1) the existence of a contract

between the parties; (2) sufficient consideration to support the contract; (3) the [Plaintiffs']
performance or willingness to perform in compliance with the contract; (4) the defendant's breach
of the contract; and (5) damages to [Plaintiffs] caused by the breach." *Lawson v. Spirit
AeroSystems, Inc.*, No. 18-CV-01100-EFM-KGS, 2018 WL 3973150, at *5 (D. Kan. Aug. 20,
2018) (citing *Stechschulte v. Jennings*, 297 Kan. 2, 298 P.3d 1083, 1098 (2013)).  The only element
at issue here is whether Sprint has plausibly alleged a breach of the release agreement.

Woelk raises several arguments which will be addressed in turn.  First, Woelk argues that
the provision at issue does not require cooperation if Woelk is adverse to Sprint.  The provision at
issue states as follows:

> 5. Cooperation.  You agree to cooperate with Sprint and its subsidiaries and
> affiliates in the defense or prosecution of any legal matter involving any other
> employee of Sprint and its subsidiaries and affiliates or involving any other matter
> that arose during your employment.  Sprint will reimburse you for your reasonable
> travel and out-of-pocket expenses incurred in providing such cooperation and
> assistance.

(Doc. 37, Exh. 3.)

"The primary rule for interpreting written contracts is to ascertain the parties' intent. If the
terms of the contract are clear, the intent of the parties is to be determined from the contract
language without applying rules of construction." *Carrothers Const. Co. v. City of S. Hutchinson*,
288 Kan. 743, 751, 207 P.3d 231, 239 (2009) (citing *Anderson v. Dillard's, Inc.*, 283 Kan. 432,
436, 153 P.3d 550 (2007)).  "Ambiguity in a contract does not appear until two or more meanings
can be construed from the contract provisions." *Id.* (citing *Gore v. Beren*, 254 Kan. 418, 426–27,
867 P.2d 330 (1994)).  In interpreting the contract, the court should not isolate any particular
provision but construe the entire contract together. *Wichita Clinic, P.A. v. Louis*, 39 Kan. App. 2d
848, 853, 185 P.3d 946, 951 (2008).  "The law favors reasonable interpretations, and results which

vitiate the purpose of the terms of the agreement to an absurdity should be avoided." *Id.* (citing *Johnson County Bank v. Ross*, 28 Kan.App.2d 8, 10–11, 13 P.3d 351 (2000)).

Woelk argues that the language in the agreement does not require adverse parties to cooperate, citing to the first provision that states Woelk agrees to cooperate with "any legal matter involving *any other* employee of Sprint."   (emphasis supplied.)  Woelk argues that the plain reading of the provision does not require him to cooperate in any matter in which he is adverse to Sprint.  Sprint argues that the provision unambiguously requires cooperation in the Delaware matter because it involved another employee and arose during the time Woelk was employed. Woelk asserts that this reading results in an absurdity because it would require Woelk to cooperate in this action.

Woelk then cites to several documents in the Delaware matter and argues that although he is not a party to that action Sprint has "suggested in other submissions [although not in the complaint] …that he played some role in the alleged infringement." (Doc. 24 at 19.)  The court again notes that it has not considered documents outside the pleadings, with the exception of the release agreement at issue, in considering this matter.[2]

Other than arguing that another interpretation would result in an absurdity, Woelk does not sufficiently explain how his interpretation is supported by the ordinary meaning of the terms in the provision.  The provision begins by stating that Woelk must cooperate in "any legal matter" that involves another employee.  The Delaware action is a legal matter.  The Delaware action is also alleged to involve another employee, Cowden.  Woelk essentially asserts that because the initial terms of the cooperation provision only require cooperation if the action involved "any other employee," he is not required to cooperate if that legal action also "involved" him.  Complicating

---

[2] This includes Woelk's argument that Sprint withdrew the original subpoena and replaced it with a superseding subpoena.  (Doc. 24 at 24.)

the interpretation, however, is that Woelk is also required to cooperate on "any other matter that arose during [his] employment."  The court finds this language to be ambiguous.  "Any other matter" could be interpreted to mean another legal mater that is not related to another employee but arose during Woelk's employment.  It could also be interpreted to mean a matter that is not a legal matter but any other matter as the initial provision may only apply to cooperation with legal matters.  Therefore, the cooperation clause could be read to require cooperation in the prosecution of a legal matter involving another employee or cooperation in another matter, such as an internal Sprint investigation regarding a contractual matter, that arose during Woelk's employment.  The cooperation clause could also be read to require Woelk's cooperation in a legal matter involving another employee or a dispute that arose during Woelk's employment.

Woelk asserts that this court must not read the provision to require Woelk to cooperate in a proceeding in which he is adverse.  At this stage, the court need not determine if the cooperation provision can be read to require Woelk to cooperate if he is adverse to Sprint.  And, if so, if such an interpretation should not be allowed because it would result in an absurdity.  Woelk is not alleged to be a party to the Delaware action.  Rather, to show that Woelk is adverse to Sprint, Woelk points to the document requests and the language therein to assert that Sprint is accusing him of misappropriation in the Delaware action and then using those documents in this action.  Although that may be the case, the court has not considered documents outside of the pleadings in deciding this motion.  The facts regarding the issue of adversity are not clear from the pleadings.

Sprint has alleged that the Delaware action involved "at least one other former employee." (Doc. 1, Exh. 2, Am. Pet. at 36.)  Sprint has also alleged that it sought cooperation in the form of complying with document requests through a subpoena and requests made by Sprint's attorney.  Woelk allegedly refused to cooperate with the document requests.  Therefore, Sprint has

sufficiently alleged that the release agreement requires Woelk to cooperate with Sprint in the Delaware action.

Woelk also argues that it would be illegal for him to cooperate against his employer because he owes a fiduciary duty of loyalty to Charter. Although Woelk may raise this affirmative defense in a motion to dismiss, the court may not grant such a motion unless the defense appears plainly on the face of the amended complaint. *Tronsgard v. FBL Fin. Grp., Inc.*, 312 F. Supp. 3d 982, 1006 (D. Kan. 2018)("[a] complaint is subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense, but the defense clearly must appear on the face of the pleading.")(citations and internal quotations omitted). The amended complaint does allege that Woelk is an employee of Charter. It further alleges that Sprint requested cooperation in the form of a subpoena response for documents and other document requests to Woelk's counsel. Woelk argues that such cooperation would require him to breach his fiduciary duty to Charter because the "duty of loyalty" requires the employee "'to refrain from'" acting "'on behalf of [the employer's] third-party competitors'" and providing any other "'assistance…to [those] competitors.'" (Doc. 52 at 9) (citing *Wall Sys., Inc. v. Pompa*, 324 Conn. 718, 731 (2017)). The entire quote from the *Wall Sys.* case states that

> An employee's "duty of loyalty includes ... the duty not to compete ... and the duty not to disclose confidential information." (Internal quotation marks omitted.) *News America Marketing In–Store, Inc. v. Marquis, supra*, 86 Conn. App. at 535, 862 A.2d 837; see also 2 Restatement (Third), *supra*, § 8.04, p. 301; id., § 8.05, p. 314. An employee's duty to refrain from competition with his employer during the employment relationship "encompasses competitive action taken directly by the [employee] with the [employer], actions taken by the [employee] on behalf of third-party competitors of the [employer], and other assistance furnished by the [employee] to the [employer's] competitors." 2 Restatement (Third), supra, § 8.04, comment (a), p. 301. This is the case even when the employee does not use the employer's property or confidential information when competing with the employer. *Id.*, comment (b), p. 301.

*Wall Sys., Inc.*, 324 Conn. at 731–32, 154 A.3d 989, 998–99.

This clarifies that the duty of loyalty requires an employee not to compete with its employer and not to disclose confidential information.  At this stage, the court cannot determine from the face of the amended complaint that complying with the document requests would breach Woelk's duty of loyalty to Charter as that duty is set forth in *Wall Sys*.  Therefore, the motion to dismiss cannot be granted on Woelk's affirmative defense of illegality.

Woelk also asserts that the claim should be dismissed due to the affirmative defense of supervening impracticability.  Basically, Woelk argues that his cooperation is impracticable and impossible due to his legal duties to his employer.  (Doc. 24 at 24.)  Again, at this stage of the litigation, the court cannot grant the motion on this affirmative defense for the reasons stated on the defense of illegality.

Woelk's motion to dismiss the breach of contract claim is denied.

**C.  Motion to Reassign**

Sprint moves to reassign this case to Judge Lungstrum.  Defendants object.  Sprint asserts that this action should be transferred because Judge Lungstrum has "gained deep familiarity with [Sprint's] technology" and many issues in this action "will be closely related to those already considered by Judge Lungstrum."  (Doc. 36 at 3.)  Sprint moves for reassignment pursuant to D. Kan. Rule 40.1 and Fed. R. Civ. P. 1.  Defendants object arguing that the prior cases concluded years ago and involved Sprint's intellectual property and not its trade secrets.  (Doc. 40 at 6.)

Local Rule 40.1, allows a judge to "transfer [a] case to another judge who consents to such transfer" when the judge has "the approval of the chief judge" and a transfer is "[i]n the interest of justice or to further the efficient disposition of the business of the court."  D. Kan. Rule 40.1.  Also, Rule 1 of the Federal Rules of Civil Procedure directs that the rules "should be construed,

administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.

As discussed in this order, a claim for trade secret misappropriation cannot be based on information disclosed in a patent application.  These prior cases involved Sprint's patents and Judge Lungstrum was called on to review the patents, interpret terms, and rule on patent infringement issues.  (Doc. 40 at 7) (citing prior Sprint cases).  Although Judge Lungstrum likely recollects the issues in these cases, Sprint has not offered any persuasive argument as to how that patent litigation is directly related to the alleged theft of trade secrets, which allegedly does not include any information disclosed in "any published Sprint patent or patent application."  (Doc. 1, Exh. 2, Am. Pet. at 35.)  Moreover, this matter includes Defendants who were not involved in the prior litigation.

Sprint's motion to reassign this case (Doc. 36) is denied.

## IV.   Conclusion

Defendants' motions to dismiss (Docs. 23, 25) are DENIED.  Sprint's motion to reassign this case (Doc. 36) is DENIED.

IT IS SO ORDERED.  Dated this 14th day of August  2020.

__s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE