UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 20-cv-2161-JWB-TJJ<br>) |
| CHARTER COMMUNICATIONS, INC.; BRIGHT HOUSE NETWORKS, LLC; TIME WARNER CABLE, LLC (f/k/a TIME WARNER CABLE INC.); CRAIG COWDEN, an individual; PAUL WOELK, an individual, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Corporate Defendants' Motion to Compel (ECF No. 95). Charter Communications, Inc., Bright House Networks, LLC, and Time Warner Cable, LLC (collectively, "Corporate Defendants") ask the Court to compel Plaintiff, Sprint Communications Company L.P. ("Sprint"), to produce information and documents responsive to four Interrogatories and six Requests for Production included in the Corporate Defendants' first set of discovery requests to Sprint. As set forth below, the Court grants Corporate Defendants' motion in part and denies it in part.

### **I.   Procedural and Discovery Dispute Background**

This case of alleged trade secret misappropriations was filed originally in Johnson County, Kansas District Court on February 20, 2020. On March 27, 2020, the case was removed to this court (ECF No. 1).[1] Corporate Defendants filed a motion to dismiss on May 4, 2020 (ECF

---

[1] Although Plaintiff filed its Petition and First Amended Petition in Johnson County District Court prior to removal here (*see* ECF No. 1-2), consistent with Fed. R. Civ. P. 3, the Court will

1

No. 25). The Court held an initial scheduling conference with the parties and entered a partial/limited Scheduling Order (ECF No. 67) on August 12, 2020, indicating that a second scheduling conference would be conducted on October 1, 2020 or approximately 14 days after the District Judge's ruling on the pending motion to dismiss, whichever was earlier. The District Judge promptly denied the motion to dismiss on August 14, 2020 (ECF No. 54) and the Court held its second scheduling conference on September 17, 2020.

Corporate Defendants served their first set of discovery requests (including Interrogatories and Requests for Production) on Sprint on July 29, 2020. Sprint served its responses and objections on September 11, 2020. During the following month, Corporate Defendants sent multiple letters to Sprint raising perceived deficiencies in various of the discovery responses. During the second scheduling conference, Corporate Defendants raised a challenge to Sprint's response to Interrogatory No. 1. The Court heard argument and ordered Sprint to serve a supplemental response to Interrogatory No.1 to properly identify the trade secrets at issue. The parties also held three substantive telephonic meet and confer sessions to discuss the disputed discovery responses, two of which followed Sprint's September 30, 2020 service of a supplemental response to Interrogatory No. 1.

With the exception of Interrogatory Nos. 2-4, the parties agree and the Court finds the parties have conferred in good faith in attempts to resolve the issues in dispute without court action, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2. With regard to Interrogatory Nos. 2-4, the Court finds Corporate Defendants did not continue to attempt to meet and confer in good faith after Sprint served its supplemental responses. Instead they merely

---

refer to the operative First Amended Petition throughout this Memorandum and Order as simply the Complaint.

notified Sprint by telephone that they would be filing their motion to compel. However, the Court recognizes that Sprint did not serve its supplemental responses to Interrogatory Nos. 2-4 until virtually the eve of Defendants' motion to compel deadline and after the parties did engage in extensive good faith meet and confer efforts on all other discovery requests at issue. In the interest of efficiency and consistent with Fed. R. Civ. P. 1, the Court therefore denies, *without prejudice*, the Corporate Defendants' motion to compel Interrogatory Nos. 2-4 as discussed more fully below.

## II.     Relevant Factual Background as Alleged in the Complaint

Sprint alleges that the Corporate Defendants, along with two former Sprint employees, Craig Cowden and Paul Woelk,[2] improperly acquired, used and disclosed Sprint's confidential, proprietary, and trade secret information related to its Voice-over-IP (VoIP) services. During an action to enforce Sprint's VoIP patents against Bright House Networks, LLC ("Bright House"), Charter Communications, Inc. ("Charter"), and others in a federal court case in Delaware, attorneys for Bright House and Charter discovered confidential and proprietary branded Sprint documents in Charter's possession, "including over 3,500 electronically stored documents it acquired from Bright House via its employees – Cowden and Woelk."[3] Sprint alleges these files "included Sprint's HC Trade Secrets, such as a wide range of highly confidential and proprietary files regarding Sprint's VoIP Wholesale network designs, peering network designs, PIN network designs, and financials, including specific savings, cost, and profit calculations, business plans,

---

[2] Cowden and Woelk are described as long-term employees of Sprint who held management-level positions prior to leaving Sprint and joining Bright House. Subsequently, Bright House was acquired by Charter and Cowden and Woelk went to work for Charter. The third Corporate Defendant, Time Warner Cable ("TWC") is a sister company of Bright House.

[3] Complaint, ECF No. 1-2 at ¶ 5.

and potential future developments."[4] Following Sprint demands, the more than 3,500 electronically stored documents were returned to Sprint.

## III. Legal Standards

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery. As amended, it provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[5]

Considerations of both relevance and proportionality now govern the scope of discovery.[6] Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[7]

---

[4] *Id.* at ¶ 8. Similarly, footnote 3 defines "Sprint's HC Trade Secrets" to include without limitation:
> any and all information relating to: Sprint technical information regarding Sprint's VoIP and other packet-based network designs, peering network designs, PIN network designs, and ethernet networks; and Sprint financial information including but not limited to specific savings, cost, and profit calculations, business plans, and other financial information related to any current or future Sprint network, access arrangements or other business opportunities.

[5] Fed. R. Civ. P. 26(b)(1).

[6] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[7] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

4

Information still "need not be admissible in evidence to be discoverable."[8] The amendment deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase, however, because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[9]

The consideration of proportionality is not new, as it has been part of the federal rules since 1983.[10] Moving the proportionality provisions to Rule 26 does not place on the party seeking discovery the burden of addressing all proportionality considerations. If a discovery dispute arises that requires court intervention, the parties' responsibilities remain the same as under the pre-amendment Rule.[11] In other words, when the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[12] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[13] Relevancy determinations are generally made on a case-by-case basis.[14]

---

[8] Fed. R. Civ. P. 26(b)(1).

[9] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[10] *Id.*

[11] *Id.*

[12] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[13] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[14] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL

"A party asserting an unduly burdensome objection to a discovery request has 'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.'"[15] The objecting party must also show "the burden or expense is unreasonable in light of the benefits to be secured from the discovery."[16] Objections that discovery is unduly burdensome "must contain a factual basis for the claim, and the objecting party must usually provide 'an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'"[17]

A pivotal issue in dispute here is the extent to which Plaintiff, Sprint, must identify in discovery the trade secrets that are the subject of its Complaint. The applicable legal standard relative to that issue is well established—a plaintiff alleging misappropriation of trade secrets must identify the trade secrets allegedly misappropriated with "reasonable specificity."[18] This means the alleged trade secrets must be described with sufficient specificity to inform the defendant of what it is the plaintiff alleges was misappropriated.[19] This standard will be discussed in greater detail in the following section.

---

765882, at *3 (D. Kan. Feb. 25, 2011).

[15] *Stonebarger v. Union Pac. R.R. Co*., No. 13-2137-JAR-TJJ, 2015 WL 64980, at *5 (D. Kan. Jan. 5, 2015) (quoting *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10-2514-RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011)).

[16] *Id.*

[17] *Id.*

[18] *EMC Corp. v. OrangePoint, LLC*, No. 11-2643, 2012 WL 13019524 (D. Kan. July 31, 2012) (quoting *Multimedia Cablevision, Inc. v. Cal. Sec. Co-Op, Inc*., Nos. 94-1130, 95-1355, 1996 WL 447815, at *1 (D. Kan. July 30, 1996)).

[19] *Id*. (citing *StorageCraft Tech. Corp. v. Symantec Corp.*, No. 07cv856 CW, 2009 WL 361282, at *2 (D. Utah Feb. 11. 2009) (quoting *Dura Global Techs., Inc. v. Magna Donnelly Corp*., No. 07-10945, 2008 WL 2064516, at *1, *2 (E.D. Mich. Dec. 6, 2007))).

**IV.    Analysis**

With the legal standards in mind, the Court considers the discovery at issue.

**Interrogatory No. 1** requests that Sprint:

> Separately identify, with specificity and by document, each trade secret that Sprint alleges that Defendants misappropriated including but not limited to each trade secret that Sprint alleges is among the 3,500 documents allegedly misappropriated by Paul Woelk (and/or Craig Cowden) as alleged in at least Paragraphs 5, 8, 10, and 69 of the [Complaint].

Sprint initially asserted objections to Interrogatory No. 1, including to the extent it seeks "specificity" at this early stage of discovery. But, Sprint also responded to Interrogatory No. 1, quoting language from its Complaint generally describing the subject matter of the documents at issue and identifying a few documents from which its answer to the Interrogatory could be ascertained. After Corporate Defendants took issue with the response, the parties met and conferred, and after the Court ordered it to do so, Sprint served its supplemental response identifying 15 numbered trade secrets with a total of 154 specific documents identified by Bates numbers under the various categories. For example, "Trade Secret No. 1" is described as "Sprint's costs (actuals and forecasts) for providing voice-over IP services as shown in at least these documents:," followed by a list of twelve documents identified with beginning and ending Bates numbers.

In their motion to compel, Corporate Defendants contend Sprint's "generic and categorical descriptions" of its trade secrets are deficient. They argue the descriptions are inadequate because they fail to specify what within each document constitutes a trade secret. They argue that similar descriptions have been ruled insufficient in other trade secret cases

7

before this court.[20] In contrast, Sprint argues that its response to Interrogatory No. 1 was drafted in accordance with the guidance provided in *EMC Corp. v. OrangePoint, LLC,*[21] and properly identifies the trade secrets that are the subject of its Complaint with "reasonable particularity."

In *EMC*, OrangePoint served an Interrogatory on EMC requesting that it describe in detail the specific trade secrets it claimed were misappropriated. In response, EMC identified 111 documents by name and Bates number range, organized into nine categories. OrangePoint asserted that it could not discern from EMC's response what specific trade secrets EMC claimed were misappropriated, because the documents EMC identified contained information and materials that were neither trade secrets nor misappropriated. OrangePoint argued EMC should be required to describe its alleged misappropriated trade secrets in sufficient detail to establish each element of a trade secret. EMC argued it properly identified the trade secrets with reasonable specificity, because the 111 documents identified, not the information contained in them, were themselves the trade secrets. The court found that EMC adequately identified its trade secrets at the discovery stage by identifying with Bates numbers the "discrete documents" it stated were trade secrets.[22] The court noted that the standard suggested by OrangePoint would

---

[20] *Gradient & Paradigm All., Inc. v. Celeritas Techs., LLC*, No. 07-1121, 2008 WL 678700, at *4 (D. Kan. Mar. 7, 2009).

[21] 2012 WL 13019524. In this trade secret misappropriation case, Plaintiff EMC alleged that its former employees, who subsequently founded and worked for defendant OrangePoint, stole approximately 300 EMC documents, 111 of which were trade secrets.

[22] *Id.* at *4 (noting this approach has been approved by other courts and citing *Multimedia Cablevision*, 1996 WL 447815, at *2; *Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2012 WL 74319, at *16 (N.D. Ill. Jan. 10, 2012); *Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1253, 1270 (C.D. Cal. 2007)).

8

be more appropriately applied at the summary judgment or trial stage, rather than the discovery stage.[23]

Although *EMC* is not binding upon this Court, the Court finds Judge O'Hara's well-reasoned opinion in that case instructive here. Like EMC, in this case Sprint has identified specific documents, by Bates number ranges, that are its claimed trade secrets. Corporate Defendants argue that Sprint's response is inadequate because it includes only "generic and categorical descriptions" of the trade secrets. The Court disagrees. Sprint's supplemental response to Interrogatory No. 1 is not so limited; rather, it identifies 154 specific documents as "trade secrets misappropriated by Defendants."[24] The identified documents themselves are identified as trade secrets. Corporate Defendants also argue that Sprint's trade secret descriptions are inadequate because they fail to specify what within each document constitutes a trade secret.[25] Again, however, the Court disagrees. That level of specificity is neither practical nor required at this stage of the case. Consistent with *EMC* and the related authorities cited *supra*, the Court finds that, at the discovery stage, trade secrets are described with "reasonable specificity" when, as here, specific documents with Bates number ranges are identified as trade secrets. Such descriptions are sufficiently specific to inform the Corporate Defendants of what it is that Sprint

---

[23] *Id.*

[24] *See* Sprint's Second Supplemental Responses to Charter's First Set of Interrogatories, at 4.

[25] Corporate Defendants argue that trade secret descriptions similar to Sprint's have been ruled insufficient in other trade secret cases, relying primarily on *Gov't Benefits Analysts, Inc. v. Gradient Ins. Brokerage, Inc.*, No. 10-2558-KHV-DJW, 2012 WL 3292850 (D. Kan. Aug. 13, 2012) and *Paradigm All., Inc. v. Celeritas Techs.*, LLC, No. 07-1121-MLB, 2008 WL 678700 (D. Kan. Mar. 7, 2008). However, in *Gradient* and *Paradigm*, there were "generalities" in the trade secret descriptions and specific trade secret documents were not identified as they are by Sprint in this case.

9

alleges was misappropriated. These descriptions will give the Corporate Defendants the ability to inquire into the details of the alleged trade secrets in depositions and additional written discovery. The Corporate Defendants' motion to compel more specific identification of Sprint's trade secrets in response to Interrogatory No. 1, as discussed above, is therefore denied.

However, the Court finds that Sprint's response to Interrogatory No. 1 is insufficient to the extent under each trade secret category it indicates there are "at least" the following responsive trade secret documents. This language renders the response ambiguous and insufficient, leaving it unclear whether Sprint has identified "all" of the trade secret documents it claims are contained in "the 3,500 documents allegedly misappropriated by Paul Woelk (and/or Craig Cowden) . . . .," as requested in Interrogatory No. 1. The referenced 3,500 documents are a finite set of documents that have been in Sprint's possession for over a year—more than ample time for it to identify "all" of the trade secret documents it claims within those 3,500 documents. Accordingly, Sprint must amend/supplement its response to Interrogatory No. 1 to clearly state that "all" such responsive trade secret documents are identified in the response (and ensure that all trade secret documents claimed from the referenced 3,500 documents are listed with Bates number ranges under each category of trade secrets identified).[26]

**Interrogatory Nos. 2-4**

The Court has already found, *supra*, with regard to Interrogatory Nos. 2-4, that Corporate Defendants did not continue their attempts to meet and confer in good faith after Sprint served its supplemental responses as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2. The Court

---

[26] To any extent the "at least" references were included in this response to address the possibility that additional misappropriated trade secrets might be identified in discovery beyond those identified in the 3,500 documents already alleged, the amended/supplemental response may, of course, note Sprint's intent and obligation to supplement the response as appropriate throughout discovery, pursuant to Fed. R. Civ. P. 26(e).

therefore denies the motion to compel responses to these Interrogatories. However, the motion is denied *without prejudice* to the re-filing of the motion to compel as to these Interrogatories, after the parties have conferred in good faith about the supplemental responses already served by Sprint or any timely supplemental responses subsequently served.[27]

As the parties confer in good faith, they would be wise to consider the following guidance regarding Interrogatory No. 2. Sprint's objections to Interrogatory No. 2 on overbroad and lack of proportionality grounds are well-founded insofar as this Interrogatory requests the identity of every individual at Sprint "or elsewhere," without any limitation, and further without any limitations as to timeframe. On the other hand, Sprint's response to this Interrogatory is inadequate at least insofar as it fails to provide the requested "dates on which [the identified Sprint employees] obtained the rights, access or disclosure and, if applicable, relinquished or lost the rights, access or returned the disclosure." As to Sprint employees, this is clearly information available to Sprint and which it should have provided in response to this Interrogatory.

**RFP Nos. 23, 25, and 40**

Each of these Requests for Production requests documents having to do with former Sprint employees, Cowden, Woelk, and Dave Flessas. RFP No. 23 requests: "All documents and communications that pertain to tracking, configuring, servicing, maintaining, or preserving the Devices of Cowden, Woelk, and Dave Flessas, including but not limited to: [five broad categories regarding their computers and devices]." For these same three individuals, RFP Nos. 25 and 40, respectively, request a "forensic image of each Device issued to or used" by them, and "[a]ll Documents containing or concerning any confidentiality covenant or policy, signed by,

---

[27] Sprint has a duty to supplement all of its Interrogatory responses in a timely manner in accordance with Fed. R. Civ. P. 26(e). Sprint's Interrogatory responses expressly note its obligation to supplement and commit to do so.

11

executed by, or applicable" to them. Sprint agreed to produce information responsive to RFP Nos. 23, 25, and 40 for Cowden and Woelk, but objected and refused to produce any responsive documents relative to Flessas on lack of relevance and proportionality grounds.

Whereas Cowden and Woelk left Sprint to go to work for Bright House, Flessas left Sprint to go to work for TWC. Unlike Cowden and Woelk, Flessas is not a defendant in this case and there are no allegations that Flessas participated in the alleged misappropriation of trade secrets in this case. The Court finds that the relevance of RFP Nos. 23, 25, and 40 as they relate to Flessas is not readily apparent on the face of the requests. The burden therefore falls upon the Corporate Defendants to show the relevance of these requests.

Corporate Defendants contend discovery into Flessas's work at Sprint is relevant to their statute of limitations defense, which is based in part on his departure from Sprint. They contend Sprint presented a theory of trade secret misappropriation by Flessas in furtherance of Sprint's argument that the alleged patent infringement in an earlier case, *Sprint v. TWC*, was willful. They stress that Sprint asked Flessas many questions during his deposition in *Sprint v. TWC,* showing that Sprint believed its proprietary information was in use by TWC in January 2015.  In its opposition to the motion, Sprint asserts that in his deposition Flessas *denied* having any knowledge or recollection of TWC's solicitation of Sprint's information and "flat-out denied providing Sprint's cost information or other trade secret information to TWC."[28] The Corporate Defendants do not dispute these assertions in their reply so the Court accepts them as accurate. This is significant. These denials (that the Corporate Defendants chose not to include along with the questions upon which they rely), as well as the fact that no claims for trade secret

---

[28] ECF No. 101 at 19.

misappropriation have been asserted against Flessas in either *Sprint v. TWC* or in this case, cut against the Corporate Defendants' relevance argument. In addition, Sprint raises another significant point, which is that the Corporate Defendants have not explained how Flessas's work *at Sprint* would trigger the statute of limitations (as opposed to what he did after moving to TWC). Again, the Corporate Defendants fail to address this issue in their reply. The Court finds that the Corporate Defendants have not shown the relevance of the documents and information requested in RFP Nos. 23, 25, and 40 to the claims and defenses in this case. The motion to compel with respect to these requests is therefore denied on this basis.[29]

**RFP No. 26** requests that Sprint produce the "3500 documents referenced in paragraphs 5, 8, 10, and 69 of the [Complaint] including every copy of such documents maintained by any individual or company custodian."

Sprint objects to this request only insofar as it seeks "every copy" of the referenced 3,500 documents, on grounds that such request is "overreaching and not proportional" to the needs of the case. Sprint also argues that, to the extent the request seeks documents that are not trade secrets, the request is irrelevant. But, Sprint offers no indication whatsoever of how many copies of the documents may exist, how many employees and devices may be affected or at issue, or how difficult it would be for Sprint to locate every copy of the documents. Nor is there any recognized objection to discovery requests on grounds that they are "overreaching." The number

---

[29] Sprint also objected to these RFPs on proportionality grounds. While the Court bases its ruling here on lack of relevance, rather than proportionality, the Court cannot allow the following response by the Corporate Defendants to the proportionality objection to pass without noting the Court's disapproval: "Sprint seeks billions of dollars in damages. Proportionality of discovery is an objection that Sprint should simply not be able to levy in response to basic trade secret requests." ECF No. 120 at 21. Such characterization is clearly contrary to the letter and intent of Fed. R. Civ. P. 26(b)(1). The amount in controversy is merely one of six factors to be considered in determining proportionality of discovery requests.

of copies, who had possession or custody of them, and whether the copies were marked confidential are issues relevant to the Sprint's trade secret misappropriation claim. Therefore the Court overrules Sprint's objections and grants the motion to compel with regard to RFP No. 26; *however,* the Court will limit the request so as to require Sprint to produce every copy only of those documents within the 3,500 that it claims are trade secrets and only to the extent such copies are in the custody, possession, or control of Sprint.

**RFP No. 27** requests that Sprint produce "all documents related to the 3500 documents referenced in RFP No. 1 [sic]." Sprint objects to this request as overbroad, unduly burdensome, disproportionate to the needs of the case, vague and ambiguous.

Courts in this District have held that document requests may be overly broad on their face if they use omnibus terms such as "related to," "concerning," or "pertaining to" and the omnibus term applies to a general category or group of documents or a broad range of information.[30] RFP No. 27 contains the omnibus term "related to" and that term applies to the broad general category of 3,500 documents referenced in Interrogatory No. 1, without any limitations or other parameters. The request is unbounded, requesting "all documents" related in any way to the referenced 3,500 documents. The Court finds that RFP No. 27 is facially overbroad and denies the motion to compel with regard to this request.

**RFP No. 30** requests that Sprint produce "Documents and communications showing each and every measure taken to maintain secrecy of each alleged trade secret." Sprint objects to the request as overbroad and not proportional to the needs of the case. It argues, pursuant to

---

[30] *See Erickson, Kernell, Deruseau & Kleypas v. Sprint Sols., Inc.*, 16-mc-212-JWL-GEB, 2016 WL 3685224, at *3 (D. Kan. July 12, 2016); *Union Pac. R.R. Co. v. Grede Foundries, Inc.*, 07-1279-MLB-DWB, 2008 WL 4148591, at *4 (D. Kan. Sept. 3, 2008); *Johnson v. Kraft Foods N. Am., Inc.*, 05-2093-JWL-DJW, 238 F.R.D. 648, 658 (D. Kan. 2006).

K.S.A. § 60-3320(4)(ii), that it is only required to make "efforts that are reasonable under the circumstances" to maintain the secrecy of its trade secrets. Thus, Sprint states it will only make reasonable searches and produce documents showing its reasonable efforts to maintain the secrecy of its trade secrets.

Sprint does not dispute the relevancy of the documents and communications requested in RFP No. 30. Clearly this information is relevant to the claims Sprint asserts in this case, including specifically whether it can show that the alleged misappropriated information and documents qualify as trade secrets pursuant to K.S.A. § 60-3320(4)(ii).

Fed. R. Civ. P. 34(b)(2)(B) provides that the response to a request for production "must either state that inspection and related activities will be permitted *as requested* or state with specificity the grounds for objecting to the request, including the reasons" (emphasis added). Rule 34 does not give the responding party the option of objecting, then conducting only those searches it deems "reasonable" and responding to the request on that limited basis. Nor does K.S.A. § 60-3320(4)(ii) define the scope of discovery in this case.[31] The documents requested in RFP No. 30 are relevant and discoverable because they go to the very issue of whether Sprint exercised reasonable efforts to maintain the secrecy of its alleged trade secrets. Sprint's objections to RFP 30 are overruled and the motion to compel granted as to this request.

---

[31] The "hypothetical" posed by Sprint in its Opposition (ECF No. 101 at 20) is likewise unpersuasive. The Court again directs the parties to Fed. R. Civ. Pro 34(b)(2)(B). If in fact there are unwieldy, voluminous logs or other documents and information responsive to RFP No. 30, Sprint can either produce them (or copies of them) or make them available for inspection.

IT IS THEREFORE ORDERED that Corporate Defendants' Motion to Compel (ECF No. 95) is granted in part and denied in part as set forth in detail herein.

Dated December 30, 2020, at Kansas City, Kansas.

*/s/ Teresa J. James*

Teresa J. James
U. S. Magistrate Judge