UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS           )
COMPANY L.P.,                   )
                                )
            Plaintiff,          )
                                )
v.                              )          Case No. 20-cv-2161-JWB-TJJ
                                )
CHARTER COMMUNICATIONS, INC.;   )
BRIGHT HOUSE NETWORKS, LLC;     )
TIME WARNER CABLE, LLC (f/k/a    )
TIME WARNER CABLE INC.); CRAIG   )
COWDEN, an individual; PAUL WOELK, )
an individual,                   )
                                )
            Defendants.          )

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff's Motion to Compel Discovery

Responses from the Corporate Defendants (ECF No. 109). Plaintiff, Sprint Communications

Company L.P. ("Sprint"), asks the Court to compel Charter Communications, Inc., Bright House

Networks, LLC, and Time Warner Cable, LLC (individually, "Charter," "Bright House," and

"TWC"; collectively, "Corporate Defendants") to produce information and documents

responsive to multiple Interrogatories and Requests for Production included in Sprint's first set

of discovery requests to Corporate Defendants. As set forth below, the Court grants Sprint's

motion in part and denies it in part.

I.      **Discovery Dispute Background[1]**

---

[1] In its Memorandum and Order dated December 30, 2020 (ECF No. 141), the Court thoroughly
summarized the procedural history and factual background of this case. The Court therefore will
not repeat that history and background here.

Sprint served its first set of discovery requests (including Interrogatories and Requests for Production) on Corporate Defendants on August 24, 2020. Corporate Defendants served their responses and objections on October 7, 2020. During the following month, the parties exchanged three letters and had one phone call in efforts to meet and confer regarding Sprint's perceived deficiencies in various of the discovery responses. The parties resolved several discovery disputes during these discussions, but some remain unresolved.

Sprint contends (and Corporate Defendants do not dispute) that the parties have conferred in good faith to resolve the issues in dispute without court action, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2. The Court agrees.

## II.    Legal Standards

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery. As amended, it provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[2]

Considerations of both relevance and proportionality now govern the scope of discovery.[3] Relevance is still to be "construed broadly to encompass any matter that bears on, or that

---

[2] Fed. R. Civ. P. 26(b)(1).

[3] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

reasonably could lead to other matter that could bear on" any party's claim or defense.[4] Information still "need not be admissible in evidence to be discoverable."[5] The amendment deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase, however, because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[6]

The consideration of proportionality is not new, as it has been part of the federal rules since 1983.[7] Moving the proportionality provisions to Rule 26 does not place on the party seeking discovery the burden of addressing all proportionality considerations. If a discovery dispute arises that requires court intervention, the parties' responsibilities remain the same as under the pre-amendment Rule.[8] In other words, when the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[9] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking

---

[4] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[5] Fed. R. Civ. P. 26(b)(1).

[6] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[7] *Id.*

[8] *Id.*

[9] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

the discovery has the burden to show the relevancy of the request.[10] Relevancy determinations are generally made on a case-by-case basis.[11]

"A party asserting an unduly burdensome objection to a discovery request has 'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.'"[12] The objecting party must also show "the burden or expense is unreasonable in light of the benefits to be secured from the discovery."[13] Objections that discovery is unduly burdensome "must contain a factual basis for the claim, and the objecting party must usually provide 'an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'"[14]

## III.    Analysis

With the legal standards in mind, the Court considers the discovery at issue. Before beginning the substance of the analysis, however, the Court notes that Corporate Defendants' response to nearly every discovery request at issue includes one or both of the following boilerplate objections: (1) the "request is objectionable to the extent it seeks information protected from discovery by the attorney-client privilege, work product doctrine, and/or any other applicable privilege or immunity"; and (2) the "request is unduly burdensome to the extent

---

[10] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[11] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[12] *Stonebarger v. Union Pac. R.R. Co.*, No. 13-2137-JAR-TJJ, 2015 WL 64980, at *5 (D. Kan. Jan. 5, 2015) (quoting *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10-2514-RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011)).

[13] *Id.*

[14] *Id.*

it seeks ESI that is beyond the scope of the ESI Order."[15] Corporate Defendants offer no explanation or support for either of these objections specific to the particular discovery request; they are merely boilerplate objections. Nor do Corporate Defendants assert these objections in their response. The Court therefore considers them abandoned, overrules them, and does not address them further.[16]

### A. Scope of Relevancy ("Sprint Confidential Information" and "Sprint's HC Trade Secrets")

The first area of dispute arises in relation to multiple discovery requests: Sprint's RFP Nos. 1, 12, 18–19, 28, 30, and 31[17] (to Bright House); Sprint's ROG Nos. 2–5 (to Bright House); Sprint's RFP Nos. 1, 8, and 17 (to TWC); Sprint's ROG Nos. 1–4 (to TWC); Sprint's RFP Nos. 1, 7, 10–11, and 19 (to Charter); and Sprint's ROG Nos. 1–4 (to Charter). In all these requests, Sprint uses the phrase "Sprint Confidential Information," sometimes adding "including any of "Sprint's HC Trade Secrets." Corporate Defendants objected that these requests are too broad and may encompass all documents in their possession labeled with Sprint confidentiality branding—not only those that relate to the trade secret allegations in this case. According to Corporate Defendants, this means that Sprint is requesting a significant number of irrelevant documents.

The Court begins its analysis by considering the Sprint-defined terms currently in dispute. Sprint has defined "Sprint Confidential Information" as:

---

[15] *See, e.g.*, ECF No. 111-1 at 2–3, 4–6; ECF No. 111-3 at 2–3, 8; ECF No. 111-5 at 2–8. These are only examples; the list is not exhaustive.

[16] *Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (holding that the party raising the objections has the burden to provide specific support for them).

[17] Corporate Defendants represent and Sprint does not contest that they have resolved Bright House's objection to RFP 15. ECF No. 133 at 9 n.9.

> any Sprint-owned trade secret, know-how, invention, concept, software program, source code, object code, application, documentation, schematic, procedure, contract, information, knowledge, data, database, process, technique, design, drawing, program, formula or test data, work in progress, engineering, manufacturing, marketing, financial, sales, supplier, technical, scientific, customer, employee, investor, or business information that is nonpublic, and includes but is not limited to the information defined as "Sprint Proprietary Information" in the Sprint Employee Agreements Regarding Property Rights and Business Practices that Defendants Cowden and Woelk signed with Sprint on June 25, 2004 and June 1, 1999, respectively.[18]

Sprint includes in the above definition, generically, "any Sprint-owned trade secret." However, "Sprint HC Trade Secrets," is defined in Sprint's Complaint as:

> includ[ing] without limitation any and all information relating to: Sprint technical information regarding Sprint's VoIP and other packet-based network designs, peering network designs, PIN network designs, and ethernet networks; and Sprint financial information including but not limited to specific savings, cost, and profit calculations, business plans, and other financial information related to any current or future Sprint network, access arrangements or other business opportunities.[19]

Corporate Defendants' primary objection to the use of these terms in the discovery requests is that Sprint's requests far exceed what it has pleaded. In their responses, Corporate Defendants agreed to produce, in lieu of "Sprint Confidential Information," a more limited subset of documents they define as "responsive non-privileged documents related to the specific documents Sprint identified in its September 30, 2020 supplemental response to [Bright House, TWC, and] Charter's Interrogatory No. 1"[20] (hereinafter "Sprint's September 30 Supplemental

---

[18] ECF No. 111-10 at 5–6.

[19] ECF No. 1-2 at 4 n.3.

[20] ECF No. 111-2 at 3; 111-5 at 3. Bright House and Charter thus agreed to produce documents related to the 154 trade secrets in 15 categories specifically identified in Sprint's September 30

Response"). Sprint maintains that this limitation is improper. Sprint claims, "By limiting the response to the specific documents identified in Sprint's September 30, 2020 supplemental interrogatory response, [Bright House] seeks to unduly limit discovery to trade secret misappropriation Sprint has already discovered. Sprint is entitled to discover whether [Bright House] has acquired, used, or disclosed other Sprint Confidential Information that Sprint considers trade secrets."[21]

Corporate Defendants' relevance objection is sustained in part. The Court finds the defined term "Sprint Confidential Information" is vague, ambiguous, and extremely overbroad. It would undoubtedly include countless irrelevant items beyond the scope of this lawsuit.[22] One portion of that definition, though—Sprint Proprietary Information, as defined in the Sprint Employee Agreements Regarding Property Rights and Business Practices that Defendants Cowden and Woelk signed with Sprint on June 25, 2004 and June 1, 1999, respectively—is sufficiently specific and limited to relevant information.[23] The defined term "Sprint HC Trade Secrets," as subsequently supplemented, also is sufficiently definite and narrow.[24]

---

Supplemental Response. TWC agreed to produce the documents it produced in *Sprint Communications Co. LP v. Time Warner Cable, Inc.*, *et al.*, Case No. 11-cv-2686 (D. Kan.).

[21] ECF No. 111-7 at 3.

[22] *Cf. McKellips v. Kumho Tire Co., Inc.*, 305 F.R.D. 655, 661 (D. Kan. 2015) ("Courts in this District have repeatedly held that 'confidential' does not equate to 'nondiscoverable' or 'privileged.'") (citing multiple cases).

[23] "Sprint Proprietary Information" is defined as "all non-public information rightfully obtained, developed or produced by or for Sprint and its employees for the benefit of the company. It is information the company owns and does not wish to freely disclose to others." ECF No. 1-2 at ¶¶ 92, 99.

[24] Pursuant to the Court's instructions, Sprint served its September 30 Supplemental Response to specifically identify 154 trade secrets in 15 categories. On December 30, 2020, this Court ruled

There is no talismanic test to determine which discovery requests are too broad to be relevant. The Notice that Sprint filed on January 21, 2021[25] potentially lends credence to Sprint's claim that Corporate Defendants may have more trade secrets in their possession than those of which Sprint is already aware. But the Court cannot accept that unfettered allowance of discovery as to "Sprint Confidential Information" is proper. The Court finds in its discretion that Sprint is entitled to discovery broader in scope than merely the 154 trade secrets it has already identified, but not so broad as to include all "Sprint Confidential Information." As the Court has already determined, that term is vague, ambiguous, and overbroad. Hence, where Sprint's discovery requests seek "Sprint Confidential Information," that part of the request shall be limited to: "the 154 trade secrets identified in Sprint's September 30 Supplemental Response and any further supplements thereafter and 'Sprint Proprietary Information' as defined in the Sprint Employee Agreements Regarding Property Rights and Business Practice that Defendants Cowden and Woelk signed with Sprint on June 25, 2004 and June 1, 1999, respectively." The Court determines that these specific items are more appropriately tailored and relevant to the allegations in Sprint's Complaint.

Finally, the Court notes TWC repeatedly states that it will produce discovery from the 2011 Sprint District of Kansas patent case. This is an amorphous and unworkable offer. As

---

that Sprint's September 30 Supplemental Response was "sufficiently specific to inform the Corporate Defendants of what it is that Sprint alleges was misappropriated," giving "Corporate Defendants the ability to inquire into the details of the alleged trade secrets in depositions and additional written discovery." ECF No. 141 at 9–10. For each of these categories, Sprint initially indicated that it was claiming "at least" the responsive trade secret documents listed. ECF No. 111-11 at 4–9. But the Court held that such language rendered the response ambiguous and insufficient and directed that "Sprint must amend/supplement its response to Interrogatory No. 1 to clearly state that 'all' such responsive trade secret documents are identified in the response . . . ." ECF No. 141 at 10. It appears that Sprint did so on January 21, 2021. ECF No. 152.

[25] ECF No. 151.

Sprint notes in its reply brief, it "does not seek documents regarding Corporate Defendants' alleged trademark or patent infringement—which would be beyond the scope of the allegations in Sprint's complaint."[26] And Sprint states that it has reason to believe that re-production of the documents from the 2011 patent case will not provide Sprint with all relevant documents.[27] The Court is not convinced that there is a useful correlation between documents produced in the 2011 "patent" case and what may be relevant to the claims and defenses in this trade secrets misappropriation case. Additionally, limiting production as TWC suggests would likely result in disputes over what was actually produced in the 2011 case (in which the undersigned was not involved) and would be difficult and unwieldy to enforce. TWC's offer is not acceptable; TWC must produce documents in the same scope as Bright House and Charter.

Given these general rulings, the Court now makes the following specific rulings on the discovery requests impacted by this decision.

- RFP 1 to Bright House: *All documents and communications from November 2008 to present discussing or concerning your use, acquisition, possession, custody, control, or disclosure of any Sprint Confidential Information, including any of Sprint's HC Trade Secrets.* The Court sustains Corporate Defendants' relevance objection in part, as to "Sprint Confidential Information" as explained *supra* at 8. Bright House shall produce all responsive documents subject to the ruling, *supra* at 8.

- RFP No. 12 to Bright House: *All documents and communications concerning, discussing, or analyzing Sprint Confidential Information, including but not limited to all documents and communications branded "Sprint Nextel Confidential" or "Sprint Nextel Proprietary" or the like.* The Court sustains Corporate Defendants' relevance objection in part, as to "Sprint Confidential Information" as explained *supra* at 8, and extends that analysis and ruling to "Sprint Nextel Confidential" and "Sprint Nextel Proprietary." In addition, the Court sustains Corporate Defendants' objection to "or the like" as overly broad and ambiguous. Corporate Defendants also object that this request contains no temporal limitation. They are correct, and this objection is sustained. The Court finds a

---

[26] ECF No. 139 at 11.

[27] ECF No. 111-9, at 3. Sprint's RPF No. 22 to TWC, however, does separately request all documents TWC produced in the 2011 patent case. ECF No. 111-3 at 20.

reasonable time frame, designed to produce relevant information, to be from November 2008—when the Complaint alleges that Mr. Cowden first began communicating with Bright House about leaving Sprint to join Bright House—through present. Bright House shall produce all responsive documents subject to the ruling, *supra* at 8, and other limitations/objections sustained in this paragraph.

- RFP No. 18 to Bright House: *All documents and communications relating to or evidencing the loss or deletion of Sprint Confidential Information from Defendant Cowden's work computer, tablet, or device during the time of his employment at Bright House and Charter.* The Court sustains Corporate Defendants' relevance objection in part, as to "Sprint Confidential Information" as explained *supra* at 8. Corporate Defendants' objection is also sustained as to the phrase "work computer, tablet, or device." This phrase may seek information from a non-work tablet or non-work device. This part of the request is therefore limited to Cowden's "work computer, work tablet, or work device." Bright House shall produce all responsive documents subject to the ruling, *supra* at 8, and other limitations/objections sustained in this paragraph.

- RFP No. 19 to Bright House: *All documents and communications relating to or evidencing the loss or deletion of Sprint Confidential Information from Defendant Woelk's work computer, laptop, or device during the time of his employment at Bright House and Charter.* The Court's ruling on RFP No. 18 to Bright House also applies here with regard to Defendant Woelk.

- RFP No. 28 to Bright House: *All documents or communications with or between Defendants Cowden and Woelk regarding Sprint Confidential Information.* The Court sustains Corporate Defendants' relevance objection in part, as to "Sprint Confidential Information" as explained *supra* at 8. Corporate Defendants also object that this request contains no temporal limitation. The Court sustains this portion of Corporate Defendants' objection; certainly without a temporal limitation, this request could result in production of years of irrelevant documents or communications—before Defendants Cowden and Woelk developed any plans to leave Sprint. The Court finds a reasonable time frame, designed to produce relevant information, to be from 2008 through present. Bright House shall produce all responsive documents subject to the ruling, *supra* at 8, and other limitations/objections sustained in this paragraph.

- RFP No. 30 to Bright House: *All documents and communications related to the transition of Craig Cowden from Sprint to Bright House, including but not limited to discussions about his current and future roles, current and prospective clients, business prospects, projected revenue generation, Sprint agreements, Sprint restrictive covenants, Sprint Confidential Information, and offers of employment.* The Court sustains Corporate Defendants' relevance objection in part, as to "Sprint Confidential Information" as explained *supra* at 8. Bright House shall produce all responsive documents subject to the ruling, *supra* at 8.

- RFP No. 31 to Bright House: *All documents and communications related to the transition of Paul Woelk from Sprint to Bright House, including but not limited to discussions about*

*his current and future roles, current and prospective clients, business prospects, projected revenue generation, Sprint agreements, Sprint restrictive covenants, Sprint Confidential Information, and offers of employment.* The Court's ruling on RFP No. 30 to Bright House also applies here with regard to Defendant Woelk.

- <u>ROG No. 2 to Bright House</u>: *Identify any Sprint Confidential Information that has ever been in your possession, custody, or control, and identify when and how such Sprint Confidential Information came into your possession, custody, or control.* The Court sustains Corporate Defendants' relevance objection in part, as to "Sprint Confidential Information" as explained *supra* at 8. Corporate Defendants also object that "Sprint does not allege that any Sprint trade secret was disclosed to Bright House." To the contrary, Sprint has, indeed, alleged disclosure to Bright House and so this objection is overruled.[28] And Corporate Defendants object to the lack of a temporal limitation. The Court sustains this portion of Corporate Defendants' objection; there is no reason to search records before Sprint alleges that Defendants Cowden and Woelk began communicating with Bright House. The Court finds a reasonable time frame, designed to produce relevant information, to be from November 2008—when the Complaint alleges that Mr. Cowden first began communicating with Bright House about leaving Sprint to join Bright House—through present. Bright House shall respond to this Interrogatory subject to the ruling, *supra* at 8, and other limitations/objections sustained in this paragraph.

- <u>ROG No. 3 to Bright House</u>: *Identify every employee or agent of Bright House, TWC, and/or Charter who had any communications with Defendants Cowden or Woelk regarding Sprint Confidential Information and/or who had access to the work computers used by Defendants Cowden or Woelk.* The Court sustains Corporate Defendants' relevance objection in part, as to "Sprint Confidential Information" as explained *supra* at 8.  Corporate Defendants also object that "Sprint does not allege that any Sprint trade secret was disclosed to Bright House." As noted with respect to ROG No. 2 to Bright House, Sprint has alleged disclosure to Bright House and so this objection is overruled. And Corporate Defendants object to the lack of a temporal limitation. The Court sustains this portion of Corporate Defendants' objection; there is no reason to search records before Sprint alleges that Defendants Cowden and Woelk began communicating with Bright House. The Court finds a reasonable time frame, designed to produce relevant information, to be from November 2008—when the Complaint alleges that Mr. Cowden first began communicating with Bright House about leaving Sprint to join Bright House—through present. Finally, Corporate Defendants object that this ROG seeks information not within Bright House's possession, custody, or control, including, for example, the identification of "every employee or agent of . . . TWC[] and/or Charter who had any communications with Defendants Cowden or Woelk . . . ."[29] For each entity listed (Bright House, TWC, and Charter), the Court understands that such entity may only have possession, custody, and control of (or be capable of identifying) the

---

[28] *See, e.g.*, ECF No. 1-2 at ¶¶ 4, 6, & 8.

[29] ECF No. 124 at 11.

communications of its own employees or agents. Each Corporate Defendant may limit its answer to its own employees and agents. Bright House shall respond to this Interrogatory subject to the ruling, *supra* at 8, and other limitations/objections sustained in this paragraph.

- ROG No. 4 to Bright House: *Identify every location, computer, email account, storage medium (e.g. CD-ROM, USB drive, etc.) and/or source that you have possessed, controlled, or accessed at any point, whether actual or digital, containing any documents generated by Sprint and/or any documents containing Sprint Confidential Information, including but not limited to all documents accessible through any and all Bright House e-mail account(s), network drives, or similar locations. This interrogatory includes but is not limited to any documents retained by Cowden or Woelk after termination of their employment with Sprint.* The Court sustains Corporate Defendants' relevance objection in part, as to "Sprint Confidential Information" as explained *supra* at 8. In addition, the Court sustains the objection to the phrase "containing any documents generated by Sprint" as overly broad and possibly including documents that are publicly available, which are not relevant to Sprint's trade secrets claim. Corporate Defendants also object that this interrogatory "is overly broad, unduly burdensome, vague and ambiguous, and not proportional to the needs of the case with respect to the phrase 'every location, computer, email account, storage medium (e.g. CD-ROM, USB drive, etc.) and/or source[,]' including potentially personal 'location[s], computer[s], email account[s], storage medium[s] (e.g. CD-ROM, USB drive, etc.) and/or source[s].'"[30] The Court agrees, and determines that Corporate Defendants need not identify information from personal sources such as Cowden's or Woelk's personal (non-work) email accounts or personal, non-work issued devices. Finally, Corporate Defendants object to the lack of a temporal limitation. As with prior rulings on the lack of a temporal limitation, the Court sustains this portion of Corporate Defendants' objection; there is no reason to search records before Sprint alleges that Defendants Cowden and Woelk began communicating with Bright House. The Court finds a reasonable time frame, designed to produce relevant information, to be from November 2008—when the Complaint alleges that Mr. Cowden first began communicating with Bright House about leaving Sprint to join Bright House—through present. Bright House shall respond to this Interrogatory subject to the ruling, *supra* at 8, and other limitations/objections sustained in this paragraph.

- ROG No. 5 to Bright House: *For every location, computer, email account, storage medium (e.g. CD-ROM, USB drive, etc.) and/or source identified in your response to Interrogatory No. 4, identify all periods of time during which you had access to that location and/or source and identify all documents containing Sprint Confidential Information you accessed from that location, computer, email account, storage medium (e.g. CD-ROM, USB drive, etc.) and/or source.* The Court sustains Corporate Defendants' relevance objection in part, as to "Sprint Confidential Information" as explained *supra* at 8. Corporate Defendants also object that this interrogatory "is overly broad, unduly burdensome, vague and ambiguous, and not proportional to the needs of

---

[30] *Id.* at 13.

the case with respect to the phrase 'every location, computer, email account, storage medium (e.g. CD-ROM, USB drive, etc.) and/or source[,]' including potentially personal 'location[s], computer[s], email account[s], storage medium[s] (e.g. CD-ROM, USB drive, etc.) and/or source[s].'" And again, Corporate Defendants object to the lack of a temporal limitation. The Court's rulings on both these objections are the same as they are with respect to ROG No. 4 to Bright House, above. Bright House shall respond to this Interrogatory subject to the ruling, *supra* at 8, and other limitations/objections sustained in this paragraph.

- RFP No. 1 to TWC: *All documents and communications from November 2008 to present discussing or concerning your use, acquisition, possession, custody, control, or disclosure of any Sprint Confidential Information, including any of Sprint's HC Trade Secrets.* The Court's ruling on RFP No. 1 to Bright House, *supra*, also applies here.

- RFP No. 8 to TWC: *All documents and communications concerning, discussing, or analyzing Sprint Confidential Information, including but not limited to all documents and communications branded "Sprint Nextel Confidential" or "Sprint Nextel Proprietary" or the like.* The Court's ruling on RFP No. 12 to Bright House, *supra*, also applies here.

- RFP No. 17 to TWC: *All documents or communications with or between Defendants Cowden and Woelk regarding Sprint Confidential Information.* The Court's ruling on RFP No. 28 to Bright House, *supra*, also applies here.

- ROG No. 1 to TWC: *Identify any Sprint Confidential Information that has ever been in your possession, custody, or control, and identify when and how such Sprint Confidential Information came into your possession, custody, or control.* The Court's ruling on ROG No. 2 to Bright House, *supra*, also applies here.

- ROG No. 2 to TWC: *Identify every employee or agent of Bright House, TWC, and/or Charter who had any communications with Defendants Cowden or Woelk regarding Sprint Confidential Information and/or who had access to the work computers used by Defendants Cowden or Woelk.* The Court's ruling on ROG No. 3 to Bright House, *supra*, also applies here.

- ROG No. 3 to TWC: *Identify every location, computer, email account, storage medium (e.g. CD-ROM, USB drive, etc.) and/or source that you have possessed, controlled, or accessed at any point, whether actual or digital, containing any documents generated by Sprint and/or any documents containing Sprint Confidential Information, including but not limited to all documents accessible through any and all TWC e-mail account(s), network drives, or similar locations. This interrogatory includes but is not limited to any documents retained by Cowden or Woelk after termination of their employment with Sprint.* The Court's ruling on ROG No. 4 to Bright House, *supra*, also applies here (modified to apply to TWC).

- ROG No. 4 to TWC: *For every location, computer, email account, storage medium (e.g. CD-ROM, USB drive, etc.) and/or source identified in your response to Interrogatory No.*

*3, identify all periods of time during which you had access to that location and/or source and identify all documents containing Sprint Confidential Information you accessed from that location, computer, email account, storage medium (e.g. CD-ROM, USB drive, etc.) and/or source.* The Court's ruling on ROG No. 5 to Bright House, *supra*, also applies here.

- RFP No. 1 to Charter: *All documents and communications from November 2008 to present discussing or concerning your use, acquisition, possession, custody, control, or disclosure of any Sprint Confidential Information, including any of Sprint's HC Trade Secrets.* The Court's ruling on RFP No. 1 to Bright House, *supra*, also applies here.

- RFP No. 7 to Charter: *All documents and communications concerning, discussing, or analyzing Sprint Confidential Information, including but not limited to all documents and communications branded "Sprint Nextel Confidential" or "Sprint Nextel Proprietary" or the like.* The Court's ruling on RFP No. 12 to Bright House, *supra*, also applies here. Charter also raises a relevance objection, claiming that there are no allegations of Charter's involvement before 2016. The Court overrules this objection later in this Memorandum and Order.

- RFP No. 10 to Charter: *All documents and communications relating to or evidencing the loss or deletion of Sprint Confidential Information from Defendant Cowden's work computer, tablet, or device during the time of his employment at Bright House and Charter.* The Court's ruling on RFP No. 18 to Bright House, *supra*, also applies here.

- RFP No. 11 to Charter: *All documents and communications relating to or evidencing the loss or deletion of Sprint Confidential Information from Defendant Woelk's work computer, laptop, or device during the time of his employment at Bright House and Charter.* The Court's ruling on RFP No. 19 to Bright House, *supra*, also applies here.

- RFP No. 19 to Charter: *All documents or communications with or between Defendants Cowden and Woelk regarding Sprint Confidential Information.* The Court's ruling on RFP No. 28 to Bright House, *supra*, also applies here.

- ROG No. 1 to Charter: *Identify any Sprint Confidential Information that has ever been in your possession, custody, or control, and identify when and how such Sprint Confidential Information came into your possession, custody, or control.* The Court's ruling on ROG No. 2 to Bright House, *supra*, also applies here.

- ROG No. 2 to Charter: *Identify every employee or agent of Bright House, TWC, and/or Charter who had any communications with Defendants Cowden or Woelk regarding Sprint Confidential Information and/or who had access to the work computers used by Defendants Cowden or Woelk.* The Court's ruling on ROG No. 3 to Bright House, *supra*, also applies here.

- ROG No. 3 to Charter: *Identify every location, computer, email account, storage medium (e.g. CD-ROM, USB drive, etc.) and/or source that you have possessed, controlled, or*

14

*accessed at any point, whether actual or digital, containing any documents generated by Sprint and/or any documents containing Sprint Confidential Information, including but not limited to all documents accessible through any and all Charter e-mail account(s), network drives, or similar locations. This interrogatory includes but is not limited to any documents retained by Cowden or Woelk after termination of their employment with Sprint.* The Court's ruling on ROG No. 4 to Bright House, *supra*, also applies here (modified to apply to Charter).

- ROG No. 4 to Charter: *For every location, computer, email account, storage medium (e.g. CD-ROM, USB drive, etc.) and/or source identified in your response to Interrogatory No. 3, identify all periods of time during which you had access to that location and/or source and identify all documents containing Sprint Confidential Information you accessed from that location, computer, email account, storage medium (e.g. CD-ROM, USB drive, etc.) and/or source.* The Court's ruling on ROG No. 5 to Bright House, *supra*, also applies here.

**B.    RPF No. 2: Sprint VoIP Wholesale Service and/or CLEC Networks Financials (All Corporate Defendants)**

Sprint's RFP No. 2, served on all Corporate Defendants, seeks "[a]ll documents and communications from 2008 through 2011 concerning, discussing or analyzing Sprint's financials regarding Sprint's VoIP wholesale services and/or CLEC network."[31] Corporate Defendants objected, agreeing to produce only "documents related to Sprint's internal cost and associated contribution margin for providing voice services to TWC."[32] They argue that anything beyond these categories of documents is overly broad and irrelevant. But Sprint maintains that internal costs and contribution margins are not the only financial metrics that are relevant. In fact, Sprint contends it is already aware of specific documents Mr. Woelk had that contained Sprint's analysis of a potential voice market deal and its potential profit.

The Court sustains Corporate Defendants' objection in part and denies it in part. On its face, the term "financials" is vague and ambiguous. On the other hand, Corporate Defendants'

---

[31] ECF No. 111-1 at 2; 111-3 at 2; 111-5 at 2.

[32] ECF No. 111-1 at 3. This language comes directly from paragraph 48 in Sprint's Complaint and indirectly from paragraph 50.

attempt to limit the discovery to the two categories they extracted from two paragraphs in the 148-paragraph Complaint, to the exclusion of other financial information put at issue by Sprint, is baseless and would unduly narrow the scope of permissible discovery. Sprint's September 30 Supplemental Response identifies categories of trade secrets that offer a more firm definition of the "financials" relevant to Sprint's claims, to wit: (1) Trade Secret No. 1: Sprint's costs (actuals and forecasts) for providing voice-over IP services as shown in listed documents[33]; (2) Trade Secret No. 2: Sprint's profit margins (actuals and forecasts) for providing voice-over IP services as shown in listed documents; (3) Trade Secret No. 3: Sprint's internal pricing forecasts for providing voice-over IP services as shown in listed documents; (4) Trade Secret No. 4: Sprint's budget and internal rate of return (IRR) modeling for providing voice-over IP services as shown in listed documents; (5) Trade Secret No. 6: Sprint's internal pricing information forecasts for voice-over IP peering arrangements as shown in listed documents; and (6) Trade Secret No. 7: Sprint's costs (actuals and forecasts) for access, interconnection, and other financial arrangements with telephone service providers to facilitate providing voice-over IP services as shown in listed documents.[34]

---

[33] As noted previously, for each of these categories, Sprint initially indicated that it was claiming "at least" the responsive trade secret documents listed. ECF No. 111-11 at 4–9. But the Court directed that "Sprint must amend/supplement its response to Interrogatory No. 1 to clearly state that 'all' such responsive trade secret documents are identified in the response . . . ." ECF No. 141 at 10.

[34] ECF No. 111-11 at 4–9. This list may not be exclusive. These are only the more obvious categories of documents that likely should be substituted for the vague term "Sprint's financials regarding Sprint's VoIP wholesale services and/or CLEC network."

The Court denies Sprint's motion to compel RFP No. 2 as written, but orders that Corporate Defendants respond to Sprint's RFP No. 2 with material responsive to the request as narrowed above by Sprint's six claimed trade secret violation categories.

### C. RFP Nos. 4–6: Construction, Development and/or Optimization of VoIP Networks (Bright House)

Sprint's RFP Nos. 4–6 to Bright House request "documents and communications from 2008 through 2010 concerning, discussing, or analyzing Bright House's[, a competitor's, or TWC's] construction, development and/or optimization of its VoIP network."[35] Bright House objects, claiming that Sprint seeks discovery far beyond what is pleaded, and fails to show that these requests are relevant. Sprint maintains these requests are relevant because its pleadings allege Bright House improperly obtained Sprint's trade secrets and it is not required to show Defendants "used" Sprint's trade secrets under the Kansas Uniform Trade Secrets Act ("KUTSA"). Sprint also points out that it "has certainly alleged misappropriation of Sprint trade secrets in the context of analysis surrounding Bright House and [TWC]'s VoIP networks."[36] And, Sprint points to three Sprint internal confidential strategy documents Mr. Woelk had on his work computer which Sprint suggests Woelk "may have used . . . as he helped expand or optimize VoIP networks at Bright House or Charter."[37]

The Court sustains Bright House's objection in part. The requests for production, as written, are overly broad and would require production of a significant number of documents irrelevant to Sprint's claims, many of which are likely to be of a highly proprietary nature to

---

[35] ECF No. 111-1 at 4, 5, 6.

[36] ECF No. 110 at 12.

[37] *Id.* at 12–13 n.9.

Bright House, a competitor, or TWC. However, the documents referenced above located on Woelk's work computer do indicate the possibility and potential ability to use Sprint's trade secrets "to short-cut the development process, modifying and constructing its VoIP network and renegotiating financial arrangements, in order to optimize Bright House's [, a competitor's, or TWC's] VoIP network and reach Sprint's level of offerings."[38] Accordingly, the Court will require Corporate Defendants to produce documents responsive to RFP Nos. 4–6, modified as follows: Documents and communications from 2008–2010 referencing Sprint or its VoIP network and concerning, discussing, or analyzing Bright House's [, a competitor's, or TWC's] construction, development and/or optimization of its VoIP network.

## D.    RFP Nos. 2–7: Pre-Acquisition Documents (Charter)

Sprint's RFP Nos. 2–7 to Charter request documents and communications concerning (1) Charter's discussion or analysis of Sprint's financials; (2) TWC's decision to stop using Sprint's VoIP wholesale services; (3) the construction, development, and/or optimization of Charter's VoIP network; (4) competitor's construction, development, and/or optimization of its VoIP network; (5) financial reasons to construct, develop, and/or optimize one's own VoIP network; and (6) all documents and communications with confidentiality brandings such as "Sprint Nextel Confidential" or "Sprint Nextel Proprietary."[39]

Charter argues that because it did not acquire Bright House and TWC until 2016, there are no relevant documents related to Charter. However, Sprint asks the Court to require production of this material, arguing that mere acquisition of a trade secret violates KUTSA.[40]

---

[38] ECF No. 1-2 ¶ 83.

[39] ECF No. 111-5 at 2–7.

[40] K.S.A. § 60-3320(2)(i).

And Sprint argues that Charter, as the parent corporation, has actual possession, custody, or control of all the Corporate Defendants' documents, making it efficient for Charter to produce the documents.

The Court overrules Charter's relevance objections. When Charter acquired Bright House and TWC, it obtained or had the legal right to the possession, custody, or control of all documents and communications that Bright House and TWC possessed at that time. [41] This necessarily includes documents and communications predating Charter's acquisition. To the extent relevant, the documents and communications do not lose their relevance merely because a new entity took possession, custody, or control of them. They remain relevant to Sprint's claims. The Court understands that there may be some duplication in production given the relationship between Corporate Defendants. The Court encourages efficiency and suggests that the parties communicate and cooperate with each other to identify and avoid duplicate productions to the extent possible.

Although the Court overrules Charter's relevancy objections to RFP Nos. 2–7 that Charter did not acquire Bright House until 2016, each of these discovery requests merit individual attention because Charter also makes other objections unique to each. The Court addresses them individually below:

- RFP No. 2 to Charter: *All documents and communications from 2008 through 2011 concerning, discussing or analyzing Sprint's financials regarding Sprint's VoIP wholesale services and/or CLEC network.* The Court overrules Charter's relevancy objection based on the statement that Charter did not obtain any Sprint alleged trade secrets until 2016, for the reasons stated above. But the Court sustains in part Charter's

_____

[41] *See Ice Corp. v. Hamilton Sundstrand Corp.*, 245 F.R.D. 513, 516–17 (D. Kan. 2007) ("Courts have universally held that documents are deemed to be within [a party's] possession, custody or control if the party has actual possession, custody or control or has the legal right to obtain the documents on demand.") (emphasis in original omitted) (citations and internal quotations omitted).

objection regarding the term "Sprint's financials," as explained *supra* at 17. Charter shall produce all responsive documents subject to the ruling, *supra* at 17, regarding Sprint financials.

- RFP No. 3 to Charter: *All documents and communications concerning, discussing, analyzing, or supporting TWC's decision to cease using Sprint's VoIP wholesale services and/or terminate or let expire the TWC contract for Sprint's VoIP wholesale services.* The Court overrules Charter's relevancy objection based on the statement that Charter did not obtain any Sprint alleged trade secrets until 2016, for the reasons stated above. Charter also objects that the request contains no temporal limitation. The Court determines that the appropriate time limit for this RFP is from 2008 through 2010.[42] Charter shall produce all responsive documents for the time period set here.

- RFP No. 4 to Charter: *All documents and communications from 2008 through 2011 concerning, discussing, or analyzing Charter's construction, development and/or optimization of its VoIP network.* The Court overrules Charter's relevancy objection based on the statement that Charter did not obtain any Sprint alleged trade secrets until 2016, for the reasons stated above. But the Court sustains Charter's objection in part that documents and communications "concerning, discussing, or analyzing Charter's construction, development and/or optimization of its VoIP network" are not relevant on their face. As detailed in the Court's ruling on RFP Nos. 4–6 to Bright House, *supra* at 18, Charter must produce all documents responsive to the RFP as limited and narrowed by the Court.

- RFP No. 5 to Charter: *All documents and communications from 2008 through 2011 concerning, discussing, or analyzing a competitor's construction, development and/or optimization of its VoIP network.* The Court's ruling on RFP No. 4 to Charter also applies here, substituting "a competitor's" for "Charter's."

- RFP No. 6 to Charter: *All documents and communications from 2008 through 2011 concerning, discussing, or analyzing financial reasons to construct, develop and/or optimize one's own VoIP network.* The Court's ruling on RFP No. 4 to Charter also applies here, substituting "financial reasons to construct, develop and/or optimize one's own VoIP network" for "Charter's construction, development and/or optimization of its VoIP network."

- RFP No. 7 to Charter: *All documents and communications concerning, discussing, or analyzing Sprint Confidential Information, including but not limited to all documents and communications branded "Sprint Nextel Confidential" or "Sprint Nextel Proprietary" or the like.* The Court overrules Charter's relevancy objection based on the statement that Charter did not obtain any Sprint alleged trade secrets until 2016, for the reasons stated

---

[42] Paragraph 81 of the Complaint alleges that TWC confirmed that it would phase out its relationship with Sprint on or about March 11, 2010, and in the fall of 2010, customers were transitioning from Sprint to TWC.

above. But the Court sustains Charter's objections regarding the terms "Sprint Confidential Information" and "or the like," as well as the temporal limit objection, as explained *supra* at 14. Charter shall produce all responsive documents subject to the ruling, *supra* at 14.

### E.  RFPs Regarding Corporate Trade Secret Policies and Violations Thereof (All Corporate Defendants)

From each Corporate Defendant, Sprint has requested documents relating to Corporate

Defendants' (1) policies, protocols, or procedures regarding Corporate Defendants' trade secrets

and violations of those policies, protocols, or procedures; and (2) policies and practices of

marking documents with confidentiality or proprietary brandings. Sprint argues that these

documents are relevant to whether Corporate Defendants knew or should have known that

Sprint's documents—which were marked with Sprint internal or confidentiality branding—

should not have been in their possession. These requests appear in Sprint's RFP Nos. 32–34 to

Bright House; Sprint's RFP Nos. 19–21 to TWC; and Sprint's RFP Nos. 21–23 to Charter.[43]

The Court sustains Corporate Defendants' objection that these RFPs seek information

that is not relevant to this case. Information about Corporate Defendants' own treatment of trade

secrets is not relevant on its face to Sprint's claims. The burden therefore lies with Sprint to show

relevancy. Sprint has not met that burden. The trade secret misappropriation claims before the

Court are Sprint's claims—not those of Corporate Defendants. Corporate Defendants raise

---

[43] Specifically, the text of Sprint's requests to each Corporate Defendant is as follows:
- All documents or communications relating to your policies, protocols, or procedures you have established to identify and maintain trade secrets, and any instructions regarding the same provided to your employees, independent contractors, and suppliers.
- All documents or communications showing any violations of your policies, protocols, or procedures relating to your trade secrets, including but not limited to identification of each trade secret, employee, or non-employee involved in the violation, and your actions or efforts to remedy the violation.
- All documents containing, reflecting, or relating to your policies and practices associated with marking documents with a confidential, proprietary, or similar stamp or legend.

additional objections, but the Court need not reach them because Sprint has not met its burden to show relevancy.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Discovery Responses from the Corporate Defendants (ECF No. 109) is granted in part and denied in part as set forth in detail herein.

Dated March 5th, 2021, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge