UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 20-cv-2161-JWB-TJJ ) |
| CHARTER COMMUNICATIONS, INC.; BRIGHT HOUSE NETWORKS, LLC; TIME WARNER CABLE, LLC (f/k/a TIME WARNER CABLE INC.); CRAIG COWDEN, an individual; PAUL WOELK, an individual, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on Corporate Defendants' Motion to Compel (ECF No. 161). Charter Communications, Inc., Bright House Networks, LLC, and Time Warner Cable, LLC (collectively, "Corporate Defendants") ask the Court to compel Plaintiff, Sprint Communications Company L.P. ("Sprint"), to produce information and documents responsive to three Interrogatories included in the Corporate Defendants' first set of discovery requests to Sprint. As set forth below, the Court grants Corporate Defendants' motion in part and denies it in part.

I.   **Discovery Dispute Background**[1]

Corporate Defendants served their first set of discovery requests (including Interrogatories and Requests for Production) on Sprint on July 29, 2020. Sprint served its

---

[1] In its Memorandum and Order dated December 30, 2020 (ECF No. 141), the Court thoroughly summarized the procedural history and factual background of this case. The Court therefore will not repeat that history and background here.

1

responses and objections on September 11, 2020. Corporate Defendants first moved to compel responses to these three Interrogatories (among other discovery requests) on October 13, 2020. On December 30, 2020, this Court held that Corporate Defendants did not continue to attempt to meet and confer in good faith after Sprint served its supplemental responses. In the interest of efficiency and consistent with Fed. R. Civ. P. 1, the Court therefore denied, without prejudice, the Corporate Defendants' motion to compel Interrogatory Nos. 2–4.

Following the Court's December 30 Memorandum and Order, Corporate Defendants and Sprint met and conferred several times, both before and after Sprint supplemented its responses to the Interrogatories multiple times. Although some of Sprint's supplemental responses have satisfied Corporate Defendants (at least in part), other responses remain in dispute. On February 19, 2021, Corporate Defendants filed the motion now before the Court. It was fully-briefed on April 19, 2021, but eight days later—on April 27, 2021, the Court granted the parties' request to stay the case while the parties pursued potential settlement. The Court lifted the stay on August 13, 2021 and is now prepared to address the motion.

Given the lengthy history of communications between the parties, Corporate Defendants contend the parties have conferred in good faith to resolve the issues in dispute without court action, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2. The Court agrees.

## II.     Legal Standards

The legal standard of review for discovery disputes is well-known and oft-applied. The Court has previously set forth the standard twice in this case and does not repeat it here. The same standards apply as in the previous opinions on motions to compel in *Sprint Communications Company L.P. v. Charter Communications*, No. 20-2161-JWB-TJJ.[2]

---

[2] 2021 WL 843240 (D. Kan. Mar. 5, 2021); 2020 WL 7770931 (D. Kan. Dec. 30, 2020).

**III.    Analysis**

With the legal standards in mind, the Court considers the discovery at issue. Sprint has not refused to respond to any of the following requests; indeed, Sprint has supplemented its responses at least three times. But Corporate Defendants remain dissatisfied with Sprint's answers. For the most part Sprint doesn't argue that the answers sought are irrelevant;[3] rather, for most of the situations discussed below, Sprint maintains that it has answered and supplemented Corporate Defendants' questions to the best of its ability based on information in its possession, after reasonable investigation. The additional "granular" details Corporate Defendants want are, according to Sprint, not proportionate to the needs of the case. The Court largely agrees. As explained in more detail below, Sprint has provided a substantial amount of information in response to Corporate Defendants' questions. At some point, it becomes less efficient to continue seeking more details in written responses to Interrogatories, rather than propounding the questions in the more fluid context of a deposition.

**A.    Interrogatory No. 2**

Interrogatory No. 2 provides:

> For each alleged trade secret identified in response to Interrogatory No. 1, identify all Persons, including every individual at Sprint or elsewhere, who have or had rights or access to the alleged trade secrets, or to whom each trade secret has been disclosed, the nature and source of the rights, access or disclosure, the dates on which each Person obtained the rights, access or disclosure and, if applicable, relinquished or lost the rights, access or returned the disclosure.[4]

---

[3] Indeed, Interrogatories 3 and 4, addressed *supra*, seek information relating to the protection Sprint gave and gives its trade secrets. The Court has already ruled that this information is relevant to Sprint's claims. ECF No. 141 at 14–15 (discussing Corporate Defendants' RFP No. 30, which sought "[d]ocuments and communications showing each and every measure taken to maintain secrecy of each alleged trade secret.").

[4] ECF No. 162-1 at 27.

3

In response to the Court's guidance provided on December 30, 2020, Corporate Defendants revised their request to "(i) defin[e] the term 'elsewhere' to refer only to those individuals or companies Sprint sent, disclosed, or otherwise disseminated its asserted trade secrets to, and (ii) add[] a temporal limitation that would encompass the five (5) years preceding and following the departures of Messrs. Cowden and Woelk."[5]

Sprint appears to have supplemented its answers about Sprint employees to Corporate Defendants' satisfaction. The remaining dispute arises out of Sprint's second supplemental response, where it represented that it is "not aware of [certain trade secrets] having been shared outside Sprint without NDA's in place."[6] Corporate Defendants ask that Sprint be compelled to expand this answer, identifying who, outside Sprint, were the third-party recipients of the shared trade secrets (plus the nature of the rights and the dates of the rights). Corporate Defendants claim this information is relevant and critical because the extent to which Sprint granted access to its trade secrets bears directly on whether it took reasonable efforts to maintain their secrecy.

Sprint represents that the trade secret documents do not contain information on their face or in metadata that indicates with whom they were shared. Accordingly, Sprint researched the policies and practices in place at the time the documents would have been shared—if, indeed, they were shared. Sprint verified that no employee would have shared the trade secrets absent a confidentiality agreement. Sprint maintains that requiring it to identify and produce a list of NDAs or confidentiality agreements it has entered into with third parties would be beyond the scope of Interrogatory No. 2, unduly burdensome, and disproportionate to the needs of the case.

---

[5] ECF No. 162-2 at 2.

[6] ECF No. 162-1 at 33.

Sprint argues it has conducted a reasonable investigation to answer Corporate Defendants' Interrogatory No. 2, and that it should not be compelled to "search the records of numerous employees and databases to find and produce potentially thousands of dubiously relevant NDAs . . . ."[7]

Sprint represents that it does not know every third party with whom it shared the trade secrets. To the extent Sprint knows or could reasonably determine <u>any</u> third party or parties with whom it shared trade secrets, it shall identify those third parties and state whether each such third party signed an NDA relative to such trade secrets. It shall also state the timing of any rights, access, or disclosure as requested in the Interrogatory. To the extent Corporate Defendants have questions about the nature of any NDAs, they can pursue those in deposition.

### B.     Interrogatory No. 3

Interrogatory No. 3 provides:

> For each alleged trade secret identified in response to Interrogatory No. 1, describe in detail the steps that Sprint takes to keep each such trade secret confidential.[8]

Sprint's supplemental responses to this request have expanded its original answer substantially. Sprint's first response identified generic means of protecting its information. Sprint expanded that response on October 9, 2020 to include some more specific details. Then, on February 5, 2021, after Corporate Defendants and Sprint continued to meet-and-confer, Sprint responded with a list of steps taken to protect the asserted trade secrets, separated by trade secret.

---

[7] ECF No. 186 at 5.

[8] ECF No. 162-1 at 34.

Sprint again amended its response on February 18, 2021 to remove the language "included but not limited to" in a paragraph about physical and electronic security measures.[9]

Despite these amendments, Corporate Defendants still contend that five of Sprint's answers are insufficient: (1) "Sprint employees . . . received training from Sprint's Human Resource group on the importance and requirement of maintaining Sprint's . . . trade secret information"; (2) "Sprint limited dissemination of information within Sprint to those with a need-to-know"; (3) "Sprint provided resources such as shared drives and central repositories"; (4) "Sprint computers were encrypted"; and (5) "Sprint uses physical and electronic security measures." Corporate Defendants maintain that these answers omit the details Corporate Defendants would need to probe these issues in depositions. They also assert that Sprint does not identify any documents supporting any of its alleged protections.

Sprint, in response, contends that it has conducted a reasonable investigation and has continually updated its responses to comply with Defendant's demands for additional granular details and sub-categories of information. It asks the Court to hold that it need not continue to provide details-upon-details on a level that is disproportionate to the needs of the case.

The Court turns to each of these individual complaints below, but notes here that it sees a pervasive theme in these complaints: they all seek a level of detail that is much more efficiently explored through oral deposition testimony

     1.    <u>Training</u>

Corporate Defendants are dissatisfied with Sprint's answer on employee training because it does not identity any details about the training, such as the policies/procedures trained on;

---

[9] *Id.* at 43.

6

which employees are trained; how often the training occurs; how the trainings occur; who provided the training, etc.

The Court determines that Sprint has provided a level of detail that is proportionate to the needs of the case. Perhaps if training were the only step Sprint took to protect its trade secrets, more detail would be warranted. But training constitutes only one portion of Sprint's response, and Sprint has given Corporate Defendants enough information to further explore the nature, timing, and frequency of the training. These types of details are better, more efficiently discovered through deposition testimony. Sprint shall identify a representative who can answer such questions. Sprint has also committed to provide the employment policies referenced in its response, and shall do so if it hasn't already. Corporate Defendants' motion is otherwise denied on this issue.

        2.      "Need-to-Know" Basis

For the "need-to-know" limits on dissemination, Corporate Defendants indicate that Sprint has not offered the criteria it utilized to determine who needed to know; whether Sprint had a list of people who could (or could not) see trade secrets; who maintained any such list; and who is knowledgeable about this allegation.

The Court determines that Sprint should identify who is knowledgeable about this allegation so Corporate Defendants can probe deeper on the standards for "need-to-know" in deposition, of they desire to do so. But requiring further detail exceeds the scope of the question. Again, these types of details are better, more efficiently discovered through deposition testimony.

        3.      Shared Drives and Central Repositories

7

For Sprint's response about shared drives and central repositories, Corporate Defendants want more information about whether they actually contained any of the alleged trade secrets, and, if so, which ones; their names and locations; who had access; and who has knowledge of these facts.

Sprint points out that it has already stated that "data on Sprint's computing systems, servers, shared drives and in its electronic repositories of information . . . were and continue to be accessible only by authorized, password-protected, unique Profiles," and that "groups and organizations, such as the Cable Solutions Group, used the previously described secure shared drives and central repositories to store and access confidential and trade secret information, including Trade Secret Nos. 1–15 and the documents identified in response to Interrogatory No. 1."[10]

The Court determines that Sprint should identify who is knowledgeable about this allegation so Corporate Defendants can probe deeper on the use of shared drives and central repositories in deposition—where these details are better explored. Requiring further detail in writing, however, goes beyond the scope of the question.

    4.    Encryption

As for Sprint's encryption measures, Corporate Defendants want more specifics on what kind of encryption was used, who had knowledge about it, who could remove the encryption, and whether any of the alleged trade secrets were actually encrypted.

The Court determines that Sprint has given a responsive answer. Sprint explained that the computers storing the trade secrets were encrypted, and so were the user Profiles. Additional

---

[10] *Id.* at 36–37.

details about the encryption measures are beyond the scope of the Interrogatory and are not proportional to the needs of the case. Corporate Defendants would better use their time obtaining further details through deposition, if so desired.

### 5.   Physical and Electronic Security Measures

Finally, with respect to Sprint's physical and electronic security measures, Corporate Defendants want to know which, if any, of these measures were applied to locations where Sprint stored the alleged trade secrets and who had knowledge of the measures.

The Court determines that identification of who had knowledge of the measures is appropriate so that person or persons may be deposed, if desired, but additional details beyond that are unnecessary. Sprint represents that it "uses electronic security measures, measures which consist of placing security guards at locked entrances to buildings, mandating the use of electronic security badges to enter buildings and certain floors, locked file rooms, locked file cabinets, and password-protected access to computers and electronic data."[11] Sprint represents that these protocols apply to each trade secret. Aside from identifying the person(s) who had knowledge of the measures, which it shall do, Sprint has provided responsive information to Interrogatory No. 3.

### C.   Interrogatory No. 4

Interrogatory No. 4 provides:

> Describe in detail the factual and legal basis for each loss or harm to Sprint that Sprint contends is directly and proximately caused by each specific instance of each Defendants' acquisition, use, or disclosure of any of Sprint's HC Trade Secrets, including an identification of all Documents and Communications on which you base your contention, an identification of all Persons who provided

---

[11] *Id.* at 43.

        information supporting your contention and an identification of the harm and any damages Sprint is entitled to recover.[12]

Sprint has substantially expanded its answer to Interrogatory No. 4 over time. Corporate Defendants argue that Sprint has still not provided the "raw data that its expert will surely rely on to formulate her or his opinions."[13] But Sprint has cited a document that lists total revenue, total cost of revenue, and total gross margin for each Sprint VoIP wholesale customer, in support of its damage claims for the demise of its VoIP business. Sprint also cited a "reasonably comprehensive collection of actual and projected financial metrics for Sprint's wholesale VoIP business."[14] And Sprint explained that it has been harmed because Corporate Defendants used its trade secrets to obtain undue leverage in negotiating agreements. Corporate Defendants maintain that Sprint has still not done enough to reasonably answer the Interrogatory.

        1.    <u>Defendant TWC</u>

First, with respect to Sprint's responses relating to Defendant TWC, Corporate Defendants fault Sprint for (1) not identifying a relevant time period for which it claims damages; (2) failing to explain how its damages are not duplicative of the damages Sprint recovered in its prior patent litigation against Defendant TWC; (3) failing to substantiate its theory that it received lower damages in other patent cases based on Defendant TWC's attempt to renegotiate its contract with Sprint at a lower price; (4) the absence of a disclosure relating to Sprint's unjust enrichment theory; (5) the absence of information relating to Sprint's reasonable

---

[12] *Id.* at 43.

[13] ECF No. 162 at 22.

[14] ECF No. 162-1 at 52.

royalties theory; and (6) only recently suggesting that Sprint lost other customers (besides Defendant TWC) because of Defendant TWC's decision to "Go It Alone."

Here are the problems with Corporate Defendants' arguments as related to Defendant TWC: (1) The interrogatory does not request a time period; (2) the calculation of duplicative damages falls within the realm of expert testimony; (3) Corporate Defendants can explore Sprint's claim relating to lower damages in patent litigation in deposition; (4) evidence in support of Sprint's unjust enrichment damages lies with Defendants—not Sprint; (5) for reasonable royalties damages, Sprint clarified that it "is not currently aware of any royalties received or licenses entered for any of the asserted trade secrets," but nevertheless pointed to evidence of the value of the trade secrets; and (6) the timing of when Sprint disclosed that Defendants' acts led to the demise of Sprint's VoIP business does not support a decision to compel responses. The Court reminds Corporate Defendants that to the extent Sprint doesn't adequately disclose its damages theories and calculations, Sprint may be denied the opportunity to pursue them at trial, which will be Corporate Defendants' remedy.

For these reasons, the Court finds Sprint's responses regarding its damages against Defendant TWC to be sufficient.

### 2. Defendant Bright House

Second, with respect to Sprint's responses relating to Defendant Bright House, Corporate Defendants argue that Sprint has not supported its assertion that Bright House used Sprint's trade secrets to compete against Sprint's VAPOR (VoIP Project to Optimize Routing) products. And Corporate Defendants again argue that they are entitled to all evidence Sprint will rely upon (in its possession) in support of unjust enrichment and reasonable royalty damages.

Defendant Bright House's arguments are unavailing because Sprint has provided responsive information in its possession after a reasonable investigation and has committed to supplement as discovery continues. Although Sprint does not address Corporate Defendants' arguments about Sprint's VAPOR products in its response brief, Sprint's February 5, 2021 Supplemental Response discusses the savings over years projected by use of Project VAPOR and explains that its PIN product (Peering Interchange Network of Partner Interchange Network) is dependent on VAPOR.[15] Corporate Defendants appear satisfied with Sprint's answers relating to PIN, and the Court fails to see why Sprint's answers about VAPOR should be held to a higher standard.

### 3. Defendant Charter

Third, with respect to Defendant Charter, Corporate Defendants want a complete response to the extent Sprint claims any damages apart from the damages it asserts against Defendants TWC and Bright House.

Sprint did not respond to this argument, seemingly conceding that it does not seek damages from Defendant Charter apart from the damages it asserts against TWC and Bright House. In Sprint's February 5, 2021 Supplemental response, Sprint answered, "Charter is liable for the conduct of its subsidiaries (Bright House and [TWC] and its employees (Cowden and Woelk) . . . ."[16] Because Sprint's position remains unclear, Sprint either must clarify that it does not seek damages from Charter separate and independent from the other Defendants, or state what damages it does seek from Charter.

---

[15] *Id.* at 48–50.

[16] *Id*. at 47.

In sum, the Court concludes Sprint has adequately responded to Interrogatory No. 4 with respect to Defendants TWC and Bright House. For those Defendants, Corporate Defendants seek a level of detail more appropriate for fleshing out in depositions or expert testimony. Sprint has explained why it does not have in its possession some of the information Corporate Defendants seek. It has also committed to continuing to investigate and to supplement in due course. The Court will not require more at this stage of discovery, other than clarifying what independent damages, if any, Sprint seeks from Defendant Charter.

**IT IS THEREFORE ORDERED** that Corporate Defendants' Motion to Compel (ECF No. 161) is granted in part and denied in part as set forth in detail herein.

Dated September 10, 2021, at Kansas City, Kansas.

_____
Teresa J. James
U.S. Magistrate Judge