IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 20-cv-2161-JWB-TJJ<br>) |
| CHARTER COMMUNICATIONS, INC.; BRIGHT HOUSE NETWORKS, LLC; TIME WARNER CABLE, LLC (f/k/a TIME WARNER CABLE INC.); CRAIG COWDEN, an individual; PAUL WOELK, an individual, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion for Rule 11 Sanctions (ECF No. 281). The motion is now fully briefed,[1] and the Court is prepared to rule. For the reasons discussed below, the Court denies the motion.

### I.   Background

Defendants argue that Sprint has repeatedly misrepresented facts during this litigation. In Defendants' opening brief, they argued Sprint misrepresented that it first learned of Defendants' alleged trade secret misappropriation in late 2019.[2] Defendants argued this representation (in various forms) was false because the evidence shows that Sprint "knew" of its claim at the latest by July 2014—when, in another lawsuit, Sprint found, reviewed, Bates-labeled, confidentiality-stamped, and produced emails from its former employee Craig Cowden that Sprint now uses as

---

[1] The parties have filed a memorandum in support of the motion (ECF No. 282), a response brief (ECF No. 293), a reply brief (ECF No. 306), and a sur-reply brief (ECF No. 320). Defendants filed a Notice of Intent to File a Request for Leave to File a Sur-Sur-Reply (ECF No. 326), but for the reasons stated at the end of this Memorandum and Order, the Court preemptively denies Defendants leave.

[2] ECF No. 282 at 15.

evidence of misappropriation.[3] In Defendants' reply brief, they shifted their focus and argue Sprint misrepresented that it did not "have" the Cowden emails until 2019.[4] For all alleged misrepresentations, Defendants ask for the sanction of dismissal.

## II. Legal Standard

"Under Rule 11(b), for every pleading, motion, or other paper presented to the court, an attorney must certify, to the best of his knowledge, information, and belief, formed after a reasonable inquiry, (1) that he isn't presenting the filing for any improper purpose, (2) that the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for changing the law, (3) that the factual contentions are warranted on the evidence or will likely have support after further investigation, and (4) that the denials of factual contentions have similar support."[5] Objective reasonability is the standard for evaluating whether sanctions are warranted; subjective beliefs are irrelevant.[6] Under this standard, a party will be subject to Rule 11 sanctions only where that party's representations were not "in accord with what a reasonable, competent attorney would believe under the circumstances."[7] "Rule 11 sanctions serve to punish a knowing filing of a false and misleading pleading."[8] Although no subjective bad faith is required to prompt Rule 11 sanctions,[9] when a moving party seeks dismissal as a

---

[3] *See* ECF No. 282 at 5; *cf.* ECF No. 282 at 4 ("[Sprint] knew that by 2014 it had already collected the presentation from Cowden's email account, reviewed it, determined it contained highly confidential Sprint information and produced it in 2014.").

[4] *See* ECF No. 306 at 1 ("Sprint repeatedly represented and otherwise suggested . . . it could not have pled trade secret misappropriation before 2019 because it did not 'have' the necessary documents until then . . . .").

[5] *King v. Fleming*, 899 F.3d 1140, 1148 (10th Cir. 2018).

[6] *White v. GM Corp.*, 908 F.2d 675, 680 (10th Cir. 1990); *see also Salmon v. Nutra Pharma Corp.*, 687 F. App'x 713, 718 (10th Cir. 2017) ("In deciding whether to impose Rule 11 sanctions, a district court must apply an objective standard; it must determine whether a reasonable and competent attorney would believe in the merit of an argument."); *Scott v. Boeing Co.*, 204 F.R.D. 698, 700 (D. Kan. 2002).

[7] *White*, 908 F.2d at 680.

[8] *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir. 1993).

[9] *Med. Supply Chain, Inc. v. Neoforma, Inc.*, 419 F. Supp. 2d 1316, 1332 (D. Kan. 2006).

sanction, Tenth Circuit courts have held that "[b]ecause dismissal is such a harsh sanction, it is appropriate only in cases of willfulness, bad faith, or some fault."[10]

### III.  Analysis

The key question before the Court is whether Sprint has misrepresented in Court filings when it had all the information necessary to plead Defendants' alleged trade secret misappropriation. This question encompasses both when Sprint knew all necessary information, as well as when Sprint possessed all necessary information. The undisputed evidence shows that Sprint did not misrepresent either. In reaching this conclusion, the Court finds the following facts significant:

- In December 2008, Craig Cowden—a Sprint employee at the time—sent three emails from his Sprint email account to his personal email account. These emails referenced BHN (Bright House Networks, LLC) and had a PowerPoint presentation attached titled BHN Communication Deck. They were not addressed to any recipients other than Cowden. Sprint has possessed these emails and their attachments since the day they were drafted.

- At the time, Cowden's job responsibilities included communicating with BHN. He had worked for Sprint for fifteen years, and as Vice President of Network Services and Access Management, he routinely "negotiated and managed Sprint's current and prospective business relationships with TWC and Bright House, including conducting negotiations with Bright House subject to non-disclosure agreements."[11]

---

[10] *Xyngular v. Schenkel*, 890 F.3d 868, 873 (10th Cir. 2018).

[11] ECF No. 293 at 3 ¶ 5.

- The PowerPoint presentation attached to Cowden's emails included Sprint confidential information, but with Sprint's label reading "Sprint Nextel Proprietary – For Internal Use Only" removed.

- In addition, other emails existed suggesting that Cowden's presentation was in direct response to questions from the president of Bright House, Nomi Bergman, and that Cowden was also working with an executive recruiting firm, TD Madison & Associates. Sprint has also had possession of these emails since 2008.

- Cowden left Sprint on good terms in January 2009 to work at BHN.

- In December 2011, Sprint filed a lawsuit against TWC for patent infringement ("the 2011 case").

- In 2014, during discovery in the 2011 case, Sprint produced over four million pages from the custodial files of more than 50 current and former employees, including Cowden.

- A "TIF" image of the three 2008 Cowden emails was produced by Sprint.

- In the 2011 case, Sprint asserts that it used an automated process to identify documents responsive to the agreed ESI search terms; ran automated privilege searches; and generally produced non-privileged documents retrieved from certain Sprint executives—including Cowden—with a default marking of "Confidential – Outside Attorneys' Eyes Only." Sprint maintains it did not review each individual document before production.

- In December 2014, Sprint subpoenaed documents from Cowden "that are owned by, concern, or are related to Sprint, including but not limited to Sprint trade secrets and

- other confidential information." Cowden responded there were no responsive documents in his possession, custody, or control.

- In December 2017, Sprint sued Charter for patent infringement.

- During this second case, in August 2019, Charter notified Sprint that it had discovered documents on Charter computers that appeared to be Sprint confidential documents. Charter produced the documents to Sprint in September 2019.

- The presentations attached to the 2008 Cowden emails were included in the documents Charter produced to Sprint in 2019. Sprint maintains that based on the return of the documents, it then searched for the presentations in Sprint's own documents and discovered the 2008 Cowden emails, which it had possessed all along.

- Sprint maintains it was only at this time that it learned Cowden may have communicated Sprint trade secrets to BHN.

Based on this information and series of events, the Court finds Defendants have failed to demonstrate that Sprint made misrepresentations to the Court as alleged by Defendants, and therefore Defendants' motion for Rule 11 sanctions must be denied.[12]

First: the statements about Sprint's knowledge. Based upon the record presented, the Court cannot conclude that the following two statements made by Sprint (and multiple variations of these statements throughout Defendants' briefing) were misrepresentations justifying Rule 11 sanctions: (1) that Sprint "discovered in September 2019 that its valuable trade secret information was misappropriated upon the return of thousands of its confidential documents"[13];

---

[12] The Court does not repeat all the alleged misrepresentations here. They can be grouped into statements about awareness/knowledge and statements about possession. There is nothing about any one of the statements that changes the Court's analysis.

[13] ECF No. 43 at 1.

5

and (2) that "[u]ntil Charter's counsel was forced to alert Sprint's outside counsel in the Fall of 2019 of the improper disclosure of Sprint's HC Trade Secrets, Sprint had no knowledge of any disclosure of Sprint's HC Trade Secrets to Bright House, TWC, or Charter."[14] Defendants' arguments that these were false representations are based on unwarranted inferences and speculation.

Sprint's production of the documents in the 2011 litigation does not, in fact, demonstrate that Sprint actually had knowledge of the documents or their content. To the contrary, Sprint maintains that it followed the agreed protocol for production of documents in the 2011 litigation, 4 million pages were produced pursuant to the protocol, a default confidentiality marking was used, and Sprint did not review each individual document prior to production. Sprint's production of the 2008 Cowden emails during discovery in the 2011 litigation falls far short of showing, as Defendants contend, that Sprint had actual knowledge of the alleged misappropriations in this case at times earlier than Sprint has represented to the Court in this case.[15]  After years of litigation, Defendants view Sprint's conduct and representations with suspicion but they have nothing to prove otherwise. Neither does Sprint's subpoena of documents from Cowden prove that Sprint suspected Cowden of wrongdoing in 2014. Indeed, Cowden's representation that he had no documents responsive to the subpoena arguably may have contributed to the decision by Sprint not to look more closely at the 2008 emails during the 2011 litigation.

Ultimately, the Court or a jury may find that Sprint should have discovered the documents that are the basis for its claims in 2014 or that Sprint's subpoena of documents from

---

[14] ECF No. 1-2 at 57 ¶ 8.

[15] Furthermore, knowledge of the 2008 Cowden emails at issue, from Cowden to himself, at the time a trusted Sprint employee, would not themselves have suggested any misappropriation of trade secrets.

Cowden supports a conclusion that it should have discovered its causes of action in this case in 2014. But the question of whether Sprint should have known or should have discovered its current claims in 2014 or earlier is not before the Court at this time and does not support Defendants' request for Rule 11 sanctions. Defendants have not shown that Sprint's statements about its knowledge or discovery of it misappropriation claims in this cae are untrue or misleading.

Second: any alleged statements about possession. In Defendants' reply brief, they pivoted their focus from when Sprint had knowledge about its misappropriation claims to when Sprint had possession of the documents from which Sprint should have known of its claims. The Court views this "pivot" as a recognition by Defendants of their inability to show that Sprint had actual knowledge conflicting with its representations to the Court. It was this shift in focus, indeed new argument, that led the Court to permit Sprint's sur-reply brief. In their reply, Defendants stated that the real issue is whether "Sprint was aware before it filed this action that it has been in possession of the Cowden emails and attachments . . . and had access to all of the other documents it relied on for context since at least 2014, but hid these facts from the Court so the Court could not consider that possession when determining when Sprint 'first learned of Defendants' [alleged] misappropriation' for purposes of deciding Defendants' motion to dismiss based on the statute of limitations."[16] In support of their position, Defendants alleged that Sprint falsely told the Court that "it did not have the Cowden documents prior to 2019" and "it did not have possession of the information contained in those documents prior to 2019."[17]

---

[16] ECF No. 306 at 11.

[17] *Id*. at 2.

7

Here is the problem with Defendants' new argument: Defendants have not shown the Court where in the record Sprint ever denied having possession of the documents prior to 2019. Neither of the quotations above are supported by citations to the record. To the contrary, as Sprint noted in its sur-reply, Defendants made clear in their opening brief in support of their motion to dismiss—and Sprint did not contest—that "since 2008, Sprint had in its possession the very same emails it features in Paragraph 50 of its Amended Petition . . . ."[18] Sprint has focused instead on when it discovered the fact that the Defendants possessed its confidential information. Sprint's position has consistently been that it did not possess all the _information_ necessary to plead a misappropriation claim (i.e., the knowledge that another entity had its confidential documents) until 2019—not that it did not possess the "information contained in those documents." According to Sprint, this critical connector was not found in a document itself that Sprint possessed, until after Sprint learned in 2019 that its documents were on Charter's computers.

Whether this fact was truly the critical connector that represented the first reasonable opportunity for Sprint to discover the alleged misappropriation remains to be seen. It will likely either be sorted out at summary judgment or in trial. But what is missing from the current record is any actual misrepresentation by Sprint about its possession of the documents necessary to support its misappropriation claims.[19]

Sprint's argument that its own prior possession of the documents themselves was not enough to form a trade misappropriation claim is not sanctionable conduct. The Court does not

---

[18] ECF No. 320 at 3.

[19] For a misappropriation claim, the Kansas Uniform Trade Secrets Act requires acquisition or disclosure of a trade secret acquired by improper means. K.S.A. § 60-3320(2). Sprint has a reasonable basis to argue that, until 2019, it was missing the information that Cowden had improperly disclosed its trade secrets or that Charter had improperly acquired them.

find any untrue statements or intentionally misleading omissions by Sprint about its possession of the documents. Defendants' arguments are better suited for a debate about whether Sprint's claims are time-barred than a debate about Sprint's counsel's integrity.

For all of the reasons discussed above, Defendants' request for Rule 11 sanctions is denied.

## IV. Attorney Fees

Sprint asks for its fees associated with responding to Defendants' motion. Rule 11 provides that "the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."[20] Whether to award reasonable expenses to the prevailing party is considered under the same standard as that for sanctions: whether the attorney's belief is "in accord with what a reasonable, competent attorney would believe under the circumstances."[21]

Defendants' filing of the instant motion is not sanctionable. Although the Court found the inferences Defendants used to support their motion unsupported, speculative, and likely fueled by their jaundiced view of Sprint, the Court does not find that Defendants filed their motion for an improper purpose or in flagrant disregard of the facts. Defendants made colorable, although unfounded, arguments. The Court will not award Sprint its expenses incurred in responding to the motion.

## V. Hearing and Sur-Sur-Reply

Two final matters: Sprint has requested a hearing on the motion for sanctions, and Defendants have given notice that they intend to seek leave to file a sur-sur-reply to their motion.

---

[20] Fed. R. Civ. P. 11(c)(2).
[21] *White*, 908 F.2d at 650.

9

Neither is necessary or warranted. The court does not require further argument on any of the issues presented. Sprint's request for a hearing and Defendants' forthcoming request to file a sur-sur-reply are both denied. The Court has fully considered this matter and further argument would be futile and wasteful of resources.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Rule 11 Sanctions (ECF No. 281) is denied.

**IT IS SO ORDERED.**

Dated October 27, 2021, at Kansas City, Kansas.

*Teresa J. James*
Teresa J. James
U. S. Magistrate Judge