UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS      )
COMPANY L.P.,                  )
                                   )
               Plaintiff,     )
                                   )
v.                                 )     Case No. 20-cv-2161-JWB-TJJ
                                 )
CHARTER COMMUNICATIONS, INC.;   )
BRIGHT HOUSE NETWORKS, LLC;    )
TIME WARNER CABLE, LLC (f/k/a     )
TIME WARNER CABLE INC.); CRAIG   )
COWDEN, an individual; PAUL WOELK, )
an individual,                  )
                                 )
              Defendants.    )

## MEMORANDUM AND ORDER

This matter comes before the Court on Corporate Defendants' Motion to Compel (ECF No. 328). Charter Communications, Inc., Bright House Networks, LLC, and Time Warner Cable, LLC (collectively, "Corporate Defendants") ask the Court to compel Plaintiff, Sprint Communications Company L.P. ("Sprint"), to produce information and documents responsive to certain Interrogatories and Requests for Production included in the Corporate Defendants' discovery requests to Sprint. As set forth below, the Court grants Corporate Defendants' motion in part and denies it in part.

Most of the discovery disputes addressed in this Memorandum and Order have at least two things in common: (1) The requests relate to discovery designed to determine when Sprint knew or should have known that it might have a trade secret misappropriation claim; and (2) Sprint objects to the requests based on attorney-client privilege and the work product doctrine. Corporate Defendants argue that Sprint has waived its privilege and protection claims by putting "at-issue" protected information relating to the statute of limitations. At the Court's request,

1

Sprint submitted a privilege log. It does not, however, contain any entries for documents reviewed from Sprint's long-time counsel, Shook, Hardy & Bacon LLP ("Shook"). Instead, Sprint submitted a letter stating that it had searched Shook's files and is not withholding any Shook documents based on privilege.[1] This letter, and Corporate Defendants' response letter, submitted at the Court's direction, are attached to this Memorandum and Order as Exhibits 1 and 2. They are discussed in more detail below. The Court first discusses waiver in general before turning to the content of the letters and other specific objections to the discovery requests.

## I.     Discovery Dispute Background[2]

Given the lengthy history of communications between the parties, Corporate Defendants contend the parties have conferred in good faith to resolve the issues in dispute without court action, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2. The Court agrees and finds accordingly.

## II.     Legal Standards

The legal standard of review for discovery disputes is well-known and oft-applied. The Court has previously set forth the standard twice in this case and does not repeat it here. The same standards apply as in the previous opinions on motions to compel in *Sprint Communications Company L.P. v. Charter Communications*, No. 20-2161-JWB-TJJ.[3]

---

[1] By searching Shook's files and submitting this letter, the Court does not find that Sprint waived the attorney-client privilege or work product protection. Sprint's counsel states in the letter that counsel was providing additional facts "to avoid any concerns that Sprint, or its counsel, may be withholding documents relating to the claims" in this case. The Court appreciates counsel's efforts to undertake the review following the parties' February 11, 2022 Zoom videoconference with the Court, and, as discussed *infra*, by initiating this search in response to Defendants' waiver argument, there is no waiver.

[2] In its Memorandum and Order dated December 30, 2020 (ECF No. 141), the Court thoroughly summarized the procedural history and factual background of this case. The Court therefore will not repeat that history and background here.

[3] 2021 WL 843240 (D. Kan. Mar. 5, 2021); 2020 WL 7770931 (D. Kan. Dec. 30, 2020).

As noted above, one overriding dispute relates to whether the discovery sought by Corporate Defendants is protected by the attorney-client privilege or the work product doctrine. "The attorney-client privilege shields from discovery communications between an attorney and client, made in confidence, under circumstances from which it may reasonably be assumed that the communication will remain in confidence."[4] For the privilege to apply, legal advice must predominate. "The privilege does not apply where legal advice is merely incidental to business advice."[5] Underlying facts do not become privileged by relaying them to an attorney.[6] The burden of establishing the applicability of the attorney-client privilege is on the party asserting it.[7] To satisfy this burden, the party "must describe in detail the documents or information sought to be protected and provide precise reasons for the objection to discovery."[8] The party "must also provide sufficient information to enable the court to determine whether each element of the asserted objection is satisfied. A blanket claim as to the applicability of the privilege/work product protection does not satisfy the burden of proof."[9]

The work product doctrine, embodied in Fed. R. Civ. P. 26(b)(3), "protects from discovery documents, things and mental impressions of a party or his representative, particularly his attorney, developed for or in anticipation of litigation or trial."[10] The work product doctrine

---

[4] *Olson v. Shawnee Cty. Bd. of Com'rs*, No. 12-2084-JTM-KGG, 2013 WL 1151481, at *2 (D. Kan. Mar. 20, 2013) (quoting *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006)).
[5] *Wagoner v. Pfizer, Inc.*, No. 07-1229-JTM, 2008 WL 821952, at *3 (D. Kan. Mar. 26, 2008).
[6] *Perez v. Alegria*, No. 15-mc-401-SAC, 2015 WL 4744487, at *4 (D. Kan. June 24, 2015) (citing *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010)).
[7] *Id.*
[8] *Lykins v. CertainTeed Corp.*, No. CIV.A. 11-2133-JTM, 2012 WL 3578911, at *8 (D. Kan. Aug. 17, 2012) (quoting *Sprint Commc'ns Co., L.P. v. Vonage Holdings Corp.*, No. 05-2433-JWL-DJW, 2007 WL 1347754, at *3 (D. Kan. May 8, 2007)).
[9] *Id.*
[10] *Wagoner*, 2008 WL 821952, at *3.

"is not intended to protect investigative work unless done so under the supervision of an attorney in preparation for the real and imminent threat of litigation or trial. Work prepared in the ordinary course of business and inserted into a protected document may still be subject to disclosure after redaction of any privileged material."[11] As with the attorney-client privilege, blanket claims of "work-product protection do not satisfy the objecting party's burden of proof. And an objecting party's failure to meet this burden when the trial court is asked to rule upon the existence of the privilege is not excused because the document is later shown to be one that would have been privileged if a timely showing had been made."[12]

When determining whether a document constitutes work product, the court looks to the primary motivating purpose behind the document's creation.[13] The threat of litigation must be "real and imminent;" even "the likely chance" of litigation does not give rise to work product.[14] The court "generally needs more than mere assertions by the party resisting discovery that the documents or other tangible items were created in anticipation of litigation.[15]

Corporate Defendants do not claim that Sprint explicitly waived the attorney-client privilege or work product protection; instead, they claim that "at issue" waiver has occurred. Courts in this district have generally followed the *Hearn v. Rhay*[16] test when determining whether a party waived the attorney-client privilege or work product protection by putting

---

[11] *Id.*

[12] *Linnebur v. United Tel. Ass'n*, No. 10-1379-RDR, 2012 WL 1183073, at *3 (D. Kan. Apr. 9, 2012) (quoting *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1267–68 (D. Kan. 2008)).

[13] *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 658 (D. Kan. 2007) (quoting *Marten v. Yellow Freight System, Inc.*, No. 96-2013-GTV, 1998 WL 13244, at *10 (D. Kan. Jan. 6, 1998)).

[14] *Id.*

[15] *Id.*

[16] 68 F.R.D. 574 (E.D. Wash. 1975).

communications or documents "at issue."[17] Under the *Hearn* test, each of the following three conditions must exist to find waiver: "(1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to [its] defense."[18] A court should find that the party asserting a privilege has impliedly waived that privilege through its own affirmative conduct when the party "places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would [be] manifestly unfair to the opposing party."[19]

## III.   Analysis

With the legal standards in mind, the Court considers the discovery in dispute. The Court first examines the general privilege waiver issue and then turns to Sprint's specific objections to discovery requests. It is worth noting initially, however, that Corporate Defendants' argument for waiver presents a practical concern; what they seek is amorphous. They seek a waiver of attorney-client privilege and work product protection as to otherwise protected materials relating to when Sprint knew or should have known of its claims. If the Court were to grant this relief, the boundaries of the ruling would be fuzzy (at the least) and would likely result in countless additional disputes about the purpose of certain discovery requests. As a practical matter, the

---

[17] *See, e.g.*, *Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100 (D. Kan. 2006); *Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625 (D. Kan. 2000); *Rahn v. Junction City Foundry, Inc.*, No. CIV.A. 00-2128-KHV, 2000 WL 1679419 (D. Kan. Nov. 3, 2000).

[18] *Hearn*, 68 F.R.D. at 581; *see also Seneca Ins. Co. v. W. Claims, Inc.*, 774 F.3d 1272, 1276 (10th Cir. 2014) (quoting *Frontier Refining Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 701 (10th Cir. 1998)).

[19] *Hearn*, 68 F.R.D. at 581; *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 430 (D. Kan. 2009) (quoting *Hearn*).

Court is leery of the potential for excessively broad discovery requests purportedly focused on what Sprint should have known. This concern is illustrated and supported by Corporate Defendants' bullet point requests under Interrogatory Nos. 15 and 17, which the Court finds overbroad and disproportionate to the needs of this case.[20] Rule 1 and proportionality concerns abound. Bearing this concern in mind, the Court proceeds to decide whether waiver exists in this case at all.

### A.      Whether Sprint Has Waived its Privilege or Protection

#### 1.      Privilege, As Addressed in the Motion Briefing

The Court looks first at whether attorney-client privilege or the work product doctrine may be used to shield Sprint from responding to Corporate Defendants' discovery requests with information and documents that would otherwise be discoverable. As noted previously, Sprint has not submitted an amended privilege log including Shook documents withheld (and represents it has no such documents), nor have any specific documents been identified as responsive but withheld on the basis of privilege or work product protection. Instead, the Court focuses here generally on whether Sprint may use privilege as a shield to protect it from disclosing materials relating to the statute of limitations defense that might otherwise be discoverable.

In support of their waiver argument, Corporate Defendants contend Sprint filed this case well outside of the three-year statute of limitations.[21] In its original state court petition, Sprint stated, "Until Charter's counsel was forced to alert Sprint's counsel in the Fall of 2019 of the improper disclosure of Sprint's HC Trade Secrets, Sprint had no knowledge of any disclosure of Sprint's HC Trade Secrets . . . ."[22] When Defendants moved for Rule 11 Sanctions, arguing

---

[20] *See infra* Sections IIIB and IIIC.
[21] ECF No. 348 at 2.
[22] ECF No. 1-1 at ¶ 8.

(among other things) that Sprint misrepresented when it possessed the "Cowden emails" (relating to the alleged misappropriation of Sprint's trade secrets), Sprint submitted the declaration of an attorney who worked on document production efforts in *Sprint v. Time Warner Cable Inc.*, 11-2686 (D. Kan.) ("the TWC Case"), a case filed in 2011, who stated, "To the best of my recollection, each individual document was not reviewed before production . . . ."[23] He also declared, "I personally do not recall seeing or hearing about the 2008 Cowden Emails before 2019."[24] Corporate Defendants argue Sprint thus put protected information relating to the statute of limitations "at issue" and thus waived the attorney-client privilege and work product protection.

Sprint disagrees with Corporate Defendants' premise that Sprint's petition put protected information relating to the statute of limitations at issue. And Sprint argues that it merely provided information about its state of knowledge in response to Corporate Defendants' inquiries; in other words, any representations about lack of knowledge were only responsive; Sprint itself did not affirmatively put its knowledge "at issue." Moreover, Sprint maintains that it will not rely on any protected information to prove its case, so there can be no "at-issue" waiver.

The Court agrees with Sprint on this issue. The three requirements of the *Hearn* test show that Sprint has not waived the attorney-client privilege or work product protection.

> a.      *Requirement No. 1: "Affirmative Act"*

First, Sprint did not assert the privilege as a result of an affirmative act. Defendants hang their hat first on Sprint's allegation in its original state court petition that it only learned of its cause of action ten years after Defendants' alleged actions. But, notably this allegation is based

---

[23] ECF No. 294 at 2.
[24] *Id.* at 3.

upon information that came from Defendant Charter's counsel, not from any investigation by Sprint or its counsel. This allegation presumably was included in the petition in accordance with Rule 11 to show that Sprint was filing its lawsuit in good faith and not obviously outside the statute of limitations. And to the extent Corporate Defendants rely upon the declaration of Sprint's attorney, the statements in the declaration and related investigation were in response to Defendants' arguments and discovery requests. The statute of limitations is an affirmative defense raised by Defendants. It is Defendants' burden to prove that Sprint's claims are stale. The Court therefore finds that Sprint did not take an affirmative action that resulted in the assertion of the privilege.

The Court recognizes that Corporate Defendants cite several non-binding district court cases, all out of jurisdiction, holding that a plaintiff waived the privilege by putting the statute of limitations at issue, including *Byers v. Burleson*,[25] *In re Pfohl Bros. Landfill Litig.*,[26] and *A.O. Smith Corp. v. Lewis, Overbeck & Furmann.*[27] But these cases are unpersuasive and at odds with more persuasive, well-reasoned authority from the District of Kansas.[28] *Byers* was an attorney malpractice case. When the plaintiff sued her attorney beyond the statute of limitations, she

---

[25] 100 F.R.D. 436, 440 (D.D.C. 1983) ("[P]laintiff has waived the privilege because the information which the defendant seeks is necessary to resolve the precise statute of limitations issue which the plaintiff has interjected into the case").

[26] 175 F.R.D. 13, 24–26 (W.D.N.Y. 1997) (holding that plaintiffs waived privilege by putting at issue the date they knew or should have known their injury or damages were caused by toxic waste).

[27] No. 90 C 5160, 1991 WL 192200, at *4 (N.D. Ill. Sept. 23, 1991) ("Defendants' assertion of the statute of limitations as a defense supports the concept of waiver of the privilege as to any communications that bear on the date on which plaintiffs discovered their injury for which they now seek to recover damages.").

[28] The District of Kansas cases are cited *infra*, in footnote 35. They contain persuasive substantive waiver analysis and address fact patterns where the party asserting the privilege has no intention of using the privileged materials, as in this case.

clearly put at issue her communications with her attorney.[29] In *In re Pfohl Bros. Landfill Litig.*, a class action toxic tort case, the plaintiffs asserted that they first learned of the cause of their injuries at a meeting attended by the plaintiffs, their attorneys, and consultants (retained by the attorneys) who shared results of an environmental and health study.[30] The plaintiffs therefore directly put the content of the discussions with their attorneys at this meeting, as well as prior meetings, at issue. This is in direct contrast to Sprint's allegations in its petition that it became aware based upon information provided to it by Defendant Charter. And *A.O. Smith Corp.* was an unpublished attorney malpractice case where the court merely gave the parties guidance instead of issuing a final ruling.[31] These cases do not mandate the same result here.

> b.   *Requirement No. 2: Putting Protected Information At Issue*

Second, Sprint's actions in filing the case and representing that it only recently learned of its claims did not put protected information "at issue" by making it relevant to the case. Sprint was only doing what was necessary to show that its filings and responses were in good faith (and likely to avoid a motion for judgment on the pleadings). Neither did Sprint's discovery responses put protected information at issue. And Sprint only produced its attorney's statement about not seeing or hearing about the Cowden emails until 2019 in response to Defendants' motion for sanctions.[32] In turn, this statement bolstered Sprint's discovery response to Bright House Networks, LLC's Interrogatory No. 9 explaining how the emails were produced in the TWC Case in 2014.[33] In other words, any Sprint statement that might relate to protected information was in response to Corporate Defendants' questions and motion. When information is provided

---

[29] 100 F.R.D. at 438.
[30] 175 F.R.D. at 17.
[31] 1991 WL 192200, at *5.
[32] ECF No. 294.
[33] ECF No. 282-4.

in response to questions or discovery requests from another party, generally the answers do not put protected information at issue.[34] Moreover, Sprint has committed that it will not rely on any privileged/protected information to prove its case. As noted *supra*, this distinguishes the instant case from the out-of-circuit cases cited by Corporate Defendants and discussed above. In cases where a party agrees not to rely on any such information, judges in the District of Kansas have found no "at issue" waiver.[35] As in these cases, Sprint is not attempting to use protected information as both a sword and a shield.[36] This is in contrast to a case heavily cited by Corporate Defendants, *Doe v. USD No. 237*.[37] In *Doe*, a school district <u>did</u> seek to use a report about a sexual harassment complaint investigation, to show the adequacy of the district's response to sexual harassment complaints.[38] But the school district also invoked the privilege to deny the plaintiffs access to the report.[39] Unlike this case, the school district in *Doe* was indeed

---

[34] *DeWitt v. Sw. Bell Tel. Co.*, Case No. 12-2605-SAC, 2014 WL 695744, at *5 (D. Kan. Feb. 24, 2014) ("Typically, a deponent does not waive the attorney-client privilege when, in response to questions, the deponent references its interactions with the legal department.").

[35] *Sprint Communications Co., L.P. v. Comcast Cable Communications, LLC, et al.*, Case No. 2:11-cv-02684-JWL-JPO, 2015 WL 11121848, at *3 (D. Kan. Apr. 16, 2015) (denying Sprint's motion for at-issue waiver, finding "the more germane inquiry 'is whether defendant will assert the privilege in aid of or invoke the privilege in furtherance of its argument [in support of its affirmative defense]" and accepting Comcast's representation that "it will not offer or rely on the substance of any legal advice or privileged communications"); *Nat'l Credit Union Admin. Bd. v. UBS Sec.*, Case No. 12-2591-JWL, 2015 WL 11089659, *2 (D. Kan. Oct. 23, 2013) (finding no waiver where the party "affirmatively states that it 'has not relied on privileged material and will not do so'"); *DeWitt*, 2014 WL 695744, at *6 ("The court finds that [party] has not waived the attorney-client privilege" where the party "states that at trial it 'does not intend to offer or rely on evidence of the substance of any legal advice it received'"); *see also Navajo Nation v. Urban Outfitters, Inc.*, Case No. 12-cv-0195-BB/LAM, 2016 WL 3475340, at *4 (D.N.M. Mar. 25, 2016) (finding no waiver where "Defendants have clearly explained that they are not relying on this advice")).

[36] *Frontier Refining Inc.*, 136 F.3d at 704 ("[A] litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion.").

[37] No. 16-2801-JWL-TJJ, 2019 WL 1925107 (D. Kan. Apr. 30, 2019).

[38] *Id.* at *7.

[39] *Id.*

using the privilege as a sword and shield, and the Court held that privilege was waived as to the report.[40] The same concern is not present here.

          c.       *Denial of Access to "Vital" Information*

And third, applying the privilege will not deny Corporate Defendants access to information "vital" to their defense. An inability to acquire the information through other means makes the information "vital."[41] When Sprint knew or should have known of its claims is relevant to Corporate Defendants' affirmative defense, but Sprint's communications with counsel are not "inextricably merged with the elements of plaintiff's case and defendants' affirmative defense."[42] Corporate Defendants have other means of acquiring the information— indeed, most of the discovery requests at issue seek to do just that. It is disingenuous now for Corporate Defendants to claim they have no ability to prove their affirmative defense without evidence of Sprint's counsel's involvement. At least twice before in this case, Corporate Defendants have argued (without reliance on Sprint's communications with its attorneys) that clearly, Sprint knew or should have known of its claims much earlier than 2019.[43]

Moreover, Sprint has searched for such evidence in response to Defendants' discovery requests. For example, Sprint answered Charter Interrogatory No. 16, "After a reasonable investigation, Sprint is not aware of any Sprint employee or agent, other than Mr. Cowden, who

---

[40] *Id.* It is also worth noting that the privilege waiver in *Doe* was limited and concrete: the school district waived its attorney-client privilege as to the report and the content of its investigation. Here, as observed *supra*, Corporate Defendants' proposed waiver is nebulous and not easily defined or applied.

[41] *Frontier Refining Inc.*, 136 F.3d at 701 ("Mere relevance, however, is not the standard articulated in *Hearn*. Instead, the information must also be 'vital,' which necessarily implies the information is available from no other source.").

[42] *Hearn*, 68 F.R.D. at 582.

[43] ECF Nos. 27 (Corporate Defendants' Motion to Dismiss); 282 (Defendants' Motion for Rule 11 Sanctions).

reviewed, was aware of, or discussed the referenced documents prior to August 6, 2019."[44] And Sprint's February 17, 2022 letter to the Court (discussed in more detail *infra*) represents that "Sprint's counsel is not withholding documents dated prior to August 6, 2019 concerning the Cowden Emails and Brighthouse Panel Discussion Presentation, or any other document or communication dated prior to August 6, 2019 evidencing any awareness of Sprint's asserted claims in the First Amended Petition." Corporate Defendants appear to want access to Sprint's privileged documents "solely as a means of checking [Sprint's] statements."[45] This is not a permissible reason for compelling production of privileged or protected documents.[46]

In sum, the Court finds that application of the *Hearn* test demonstrates Sprint did <u>not</u> put protected information relating to the statute of limitations at issue in this case and thereby waive the attorney-client privilege or work product protection.

## 2.   Privilege, As Addressed in the Parties' Post-Briefing Letters

Before turning to the specific discovery requests at issue, the Court discusses one more matter related to privilege. During a Zoom videoconference with the parties on February 11, 2022, the Court ordered that Sprint complete its review of attorney files and provide an updated privilege log that encompasses the attorney files and includes all required privilege log information. In lieu of updating its privilege log, Sprint submitted a letter to the Court on February 17, 2022 (attached as Exhibit 1), explaining the process it undertook to search Shook's files and asserting that it had not withheld any Shook documents based on privilege. Corporate Defendants submitted a responsive letter on February 21, 2022 (attached as Exhibit 2). Corporate Defendants' letter addressed the alleged insufficiency of Sprint's searches and responses. The

---

[44] ECF No. 330-5 at 12.
[45] *Frontier Refining Inc.*, 136 F.3d at 702.
[46] *Id.*

Court briefly addresses the arguments contained in the letters and their impact on the privilege waiver issue.

Corporate Defendants' letter criticized Sprint's search process and conclusion on four grounds: (1) Sprint only addressed whether it *knew* of the existence of the claims in the state court petition—not whether it *should have known* of the existence of the documents at issue; (2) Sprint's letter only discusses whether "anyone at Shook" was aware of, accessed, or reviewed the Cowden emails or Bright House Panel Discussion Presentation prior to August 6, 2019, but Corporate Defendants seek discovery from Sprint and its agents, including outside discovery vendors; (3) Sprint's letter does not address whether the documents were "tagged" without accessing or reviewing them; and (4) Sprint's letter fails to address the specific discovery requests in Corporate Defendants' motion to compel. Corporate Defendants also fault Sprint for not investigating requests relating to David Flessas.

First, Sprint's detailed explanation of its search process appears to be thorough. But there is one understandable disconnect: Sprint hasn't (and probably couldn't have) certified that it has searched for all documents evidencing whether it should have known of the existence of its claims before August 6, 2019. Corporate Defendants point to their interrogatories that specifically request information related to when Sprint should have been aware of the documents at issue. Sprint's certification does not address searches for this information. The Court agrees with Corporate Defendants on this point. The manner in which Sprint must amend and supplement its relevant discovery responses is addressed in detail *infra*, in the Court's discussion of specific discovery requests and objections.

Second, Corporate Defendants complain that Sprint's letter only addresses whether "anyone at Shook" was aware of, accessed, or reviewed the emails or presentation prior to

13

August 6, 2019. Corporate Defendants accurately point out that their discovery requests are also targeted at Sprint or other agents of Sprint, including outside discovery vendors. The letter does relate only to Sprint's searches for responsive information in Shook's database. Nonetheless, Corporate Defendants' discovery requests are broader than the Sprint searches described in its letter. The manner in which Sprint must amend and supplement its relevant discovery responses is addressed in detail *infra*, in the Court's discussion of specific discovery requests and objections.

Third, Corporate Defendants want Sprint to address whether the Cowden e-mails or Bright House presentation were "tagged" in some way without accessing or reviewing them. The requests do not expressly ask about "tagging" in the absence of actual access or review, although perhaps a "tagging" process is covered by the request for information on "the method or process by which the documents were identified for collection" in Charter Interrogatory Nos. 15 and 17.[47] The Court will not require Sprint to provide information beyond that requested in the discovery requests at issue, but to the extent that this request is subsumed in Charter Interrogatory Nos. 15 and 17, Sprint shall amend and supplement its answers with responsive information, in accord with the Court's discussion of those particular interrogatories, *infra*.

Fourth, Corporate Defendants identify several issues raised in their motion to compel but not addressed in Sprint's letter—largely the same issues identified in Corporate Defendants' first point. As above, Sprint's letter is more narrow than Corporate Defendants' requests. The manner in which Sprint must amend and supplement its relevant discovery responses is addressed in detail *infra*, in the Court's discussion of specific discovery requests and objections.

---

[47] ECF No. 330-8 at 3, 5.

And finally, as to the requests regarding David Flessas: Sprint indicated it did not investigate requests relating to Mr. Flessas because information relating to Mr. Flessas is not relevant or proportional to the issues in the case. Charter RFP Nos. 167 and 171, which seek production regarding Mr. Flessas, were not addressed in Corporate Defendants' motion to compel. Because Corporate Defendants did not ask the Court to compel responses to these RFPs, the Court does not further address this issue, other than to note that it has already issued guidance on the relevance of discovery related to Mr. Flessas in a prior Memorandum and Order ruling another motion to compel by Corporate Defendants.[48]

In sum, Sprint's letter dated February 17, 2022 does not moot the privilege waiver issues raised in Corporate Defendants' motion to compel. The letter does address the issues in part, but does not fully resolve all of the pending discovery disputes. The Court next turns to the specific disputes.

**B.  Charter Interrogatory No. 15**

Interrogatory No. 15 provides, in part:

> Identify and describe with specificity the "collections from Cowden and Woelk that were collected for other litigations" as described in the correspondence from Shook, Hardy & Bacon to Arnold & Porter dated February [4], 2021 (attached as Exhibit A), including the original and copies of each . . . .[49]

The Interrogatory also requests Sprint provide twelve categories of specific information for each collection.[50] For example, Corporate Defendants seek the names of who collected the documents, the "process by which the documents were identified," where the collections were

---

[48] ECF No. 141 at 11–13.

[49] ECF No. 330-4 at 2. Corporate Defendants did not attach the referenced letter to their motion. Upon request from the Court, a copy was provided, with clarification that the actual date of the letter was February 4, 2021, not February 11, 2021.

[50] *Id.* at 2–3.

stored, anyone who had access and dates on which such person accessed, viewed, or searched the collection.[51]

Sprint objected to this interrogatory on four grounds: (1) overly broad and seeking information not relevant or proportional to the needs of the case; (2) unduly burdensome as it requests information that Sprint does not track in the ordinary course of business; (3) contains multiple, discrete subparts; and (4) is directed at information protected by the attorney-client privilege and work product doctrine.[52]

Despite these objections, Sprint provided a two-paragraph response, stating that "Sprint personnel" collected and preserved certain emails and documents from Cowden's and Woelk's computers when they left, for "at least" one 2008 case in the District of Minnesota.[53] This is not responsive to the interrogatory. This response leaves Corporate Defendants to speculate about which personnel collected and preserved which emails, and which, if any, additional cases are omitted.

While Sprint doesn't overtly assert conditional objections because its response does not begin, "Subject to and without waiving these objections," essentially Sprint has lodged conditional objections.[54] "Conditional objections," also referred to as "conditional responses," are invalid and unsustainable.[55] Among the reasons is that objections followed by an answer

---

[51] *Id.* at 2.
[52] ECF No. 330-8 at 2–3.
[53] *Id.* at 3.
[54] Conditional objections or responses occur when "a party asserts objections, but then provides a response 'subject to' or 'without waiving' the stated objections." *Westlake v. BMO Harris Bank N.A.*, No. 13-2300-CM-KGG, 2014 WL 1012669, *3 (D. Kan. March 17, 2014) (citing *Sprint v. Comcast Cable Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, Nos. 11-2684-JWL, 11-2685-JWL, 11-2686-JWL, 2014 WL 1569963 (D. Kan. April 18, 2014)).
[55] *See Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2014 WL 545544, at *2 (D. Kan. Feb. 11, 2014).

"preserve nothing and serve only to waste the time and resources of both the Parties and the Court."[56] "[A]nswering subject to an objection lacks any rational basis. There is either a sustainable objection to a question or request or there is not."[57] Rules 33 and 34 demand an answer to an interrogatory, a statement that inspection or production will be permitted as requested, or an objection. The discovery rules contemplate no other response. The Court could overrule Sprint's objections on this basis alone. Nevertheless, while the Court notes its rejection of conditional objections, this is not the basis of the Court's holding.

The Court first finds that the interrogatory is relevant. It seeks to gather information which might tend to show when Sprint discovered or should have discovered its misappropriation claims. Who at Sprint found, accessed, viewed, and searched the documents may shed light on whether and when Sprint knew or should have known of their contents. The process by which the documents were identified also may shed light on whether the documents were analyzed individually at the time of collection. Lastly, how and where the documents were stored may show who accessed the documents and whether Sprint had actual knowledge of or should have known of their contents.

Because the interrogatory seeks relevant information on its face, Sprint has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[58] "A party asserting an unduly burdensome objection

---

[56] *Id.* at *2 (quoting *Consumer Elecs. Ass'n v. Compras & Buys Magazine, Inc.*, No. 08-21085, 2008 WL 4327253, at *2 (S.D. Fla. Sept. 18, 2008)).

[57] *Tardif v. People for the Ethical Treatment of Animals*, No. 2:09-cv-537-FtM-29SPC, 2011 WL 1627165, at *1 (M.D. Fla. April 29, 2011).

[58] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

to a discovery request has 'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.'"[59] The objecting party must also show "the burden or expense is unreasonable in light of the benefits to be secured from the discovery."[60] Objections that discovery is unduly burdensome "must contain a factual basis for the claim, and the objecting party must usually provide 'an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'"[61]

With the exception of three of Charter's bullet point requests under Interrogatory No. 15 discussed specifically *infra*, Sprint has not met this burden. And Sprint also has not made any effort to show that the subparts of the question should be counted independently. In fact, Sprint does not discuss the law governing its objection about "multiple, discrete subparts" at all in its response brief.[62] It is clear that Sprint does not want to answer this Interrogatory because it requires significant detail that may be difficult to ascertain. But, the information—to the extent it exists—may be critical to Corporate Defendants' statute of limitations defense. Sprint has not demonstrated that its inconvenience in answering the interrogatory to the best of its ability is disproportionate to the needs of the case. Sprint's objections are overruled except as noted in the following paragraphs.

---

[59] *Stonebarger v. Union Pac. R.R. Co*., No. 13-2137-JAR-TJJ, 2015 WL 64980, at *5 (D. Kan. Jan. 5, 2015) (quoting *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10-2514-RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011)).

[60] *Id.*

[61] *Id.*

[62] Sprint does not discuss the law governing the counting of subparts in any of its objections or briefing. Although the Court suspects that at least some of the subparts of various interrogatories should "count" as additional interrogatories, the Court is not going to take on Sprint's burden and individually examine the subparts.

One objection asserted by Sprint with merit is that Charter's request for the purpose for which the documents were collected is overbroad and not proportional to the needs of the case. The Court agrees and Corporate Defendants do not rebut Sprint's objection to the "purpose" requests. Therefore, Sprint's objection is sustained insofar as: The third bullet point under Charter Interrogatory No. 15 shall be limited to "the litigations for which the documents were collected"; and the next-to-last bullet point under this interrogatory shall be stricken.

Additionally, Sprint argues, Corporate Defendants do not rebut, and the Court agrees with Sprint, that the request to identify any individual who had access to these collected documents is overbroad and disproportionate to the needs of the case. Therefore, the ninth bullet point under this interrogatory shall be limited to: "The individuals who accessed the collection (or any copies thereof) since the date of the collection . . . ."

Finally, the Court addresses Sprint's attorney-client privilege and work product doctrine objection. The Court has held that Sprint did not universally waive the privilege or work product protection by putting the statute of limitations at-issue. But the Court cannot determine from Sprint's response exactly what documents or information, if any, Sprint is withholding on the basis of privilege or work product doctrine. The exhibit to Sprint's response brief suggests that Sprint may not be withholding any at all.[63] Although Sprint has submitted a privilege log, the entries are not tied to specific discovery requests. This is understandable; the thrust of the motion to compel to this point has been whether Sprint waived the privilege through its actions in this case—not whether individual documents contain privileged information or work product.

Nevertheless, because of the Court's resolution of the waiver issue, the privilege log entries for materials responsive to the discovery requests in dispute are now at issue. And before

---

[63] ECF No. 341-2.

Defendants and the Court can evaluate whether those materials are privileged or protected, Sprint must identify what (if any) responsive materials it is withholding. The Court therefore enters the following order with respect to this Interrogatory.

Within fourteen days of the date of this Memorandum and Order, Sprint must amend and supplement its response to Charter Interrogatory No. 15 to:

(1) delete the conditional objections;

(2) respond fully to all portions of the Interrogatory to which the Court has overruled Sprint's objections;

(3) if any materials are withheld on the basis of privilege or work product doctrine, so state, and, also within fourteen days of the date of this Memorandum and Order, identify with specificity which entries on the privilege log are responsive to this interrogatory; and

(4) if Sprint represents that there are no responsive documents, so state, and indicate what steps have been taken to search for responsive documents.[64]

### C.   Charter Interrogatory No. 17

Interrogatory No. 17 provides:

> Identify and describe with specificity each and every version of the December 13, 2008 Cowden E-mails and Brighthouse Panel Discussion Presentation produced by Sprint in this or any other lawsuit between the parties by providing the following information for each:
> - the sources from which the documents were collected;
> - the dates on which the documents were collected;
> - the litigations or other purpose for which the documents were collected;
> - the individuals who performed the collection;
> - the method or process by which the documents were identified for collection;
> - the manner in which the documents were collected;

---

[64] Sprint's February 17, 2022 letter offers a good example of the detail the Court would like to see in any search description.

- the manner in which the collections (or any copies thereof) have been stored since collection;
- the locations where the collections (or any copies thereof) have been stored since collection;
- the individuals who had access to the collections (or any copies thereof) since the date of collection; the dates on which the collections (or any copies thereof) were accessed, viewed, or searched by any individual;
- the manner which the collections (or any copies thereof) were accessed, viewed, or searched by any individual;
- the purpose for which any of the collections (or copies thereof) were accessed, viewed, or searched by any individual; and
- whether any notes concerning these documents were made in any attorney files or document database, and if so, when the notes were made and by whom.[65]

Sprint objected to this interrogatory on the same four bases as Interrogatory No. 15: (1) overly broad and seeking information not relevant or proportional to the needs of the case; (2) unduly burdensome as it requests information that Sprint does not track in the ordinary course of business; (3) contains multiple, discrete subparts; and (4) is directed at information protected by the attorney-client privilege and work product doctrine.[66]

Again, though, Sprint also provided a response,[67] directing Defendants to its responses to Charter Interrogatory No. 18 and Bright House Interrogatory Nos. 9, 10, and 12. Sprint also stated, "After a reasonable investigation, Sprint is not aware of any Sprint employee or agent, other than Mr. Cowden, who reviewed, was aware of, or discussed the referenced documents prior to August 6, 2019."[68] In its response brief, Sprint also represented that no notes exist concerning these documents.[69]

---

[65] ECF No. 330-4 at 3–4.
[66] ECF No. 330-8 at 6–7.
[67] As discussed *supra*, Sprint's response renders its objections conditional, resulting in a waiver of the objections.
[68] *Id.* at 7.
[69] ECF No. 341 at 12.

If, indeed, the answer to this Interrogatory is that no one else viewed or was even aware of the documents prior to August 6, 2019, then the burden on Sprint to respond to this interrogatory is minimal. Moreover, Sprint has not demonstrated that the information about the documents' history is unavailable in reasonably accessible metadata. The interrogatory seeks information relevant to when Sprint knew or should have known of its claims. And Sprint has made no effort to support its objections. The Court determines they should be overruled, except as noted in the following paragraphs.

Again, Sprint objects that Charter's request for the purpose for which the documents were collected is overbroad and not proportional to the needs of the case. And again, the Court agrees and Corporate Defendants do not rebut Sprint's objection to the "purpose" requests. Therefore, Sprint's objection is sustained insofar as: The third bullet point under Charter Interrogatory No. 15 shall be limited to "the litigations for which the documents were collected"; and the next-to-last bullet point under this interrogatory shall be stricken.

Additionally, Sprint argues, Corporate Defendants do not rebut, and the Court agrees with Sprint, that the request to identify any individual who had access to these collected documents is overbroad and disproportionate to the needs of the case. Therefore, the ninth bullet point under this interrogatory shall be limited to: "The individuals who accessed the collection (or any copies thereof) since the date of the collection . . . ."

As with Charter Interrogatory No. 15, Defendants and the Court cannot yet evaluate Sprint's attorney-client privilege and work product doctrine objection. The Court cannot determine from Sprint's response exactly what documents or information, if any, Sprint is withholding on the basis of privilege or work product doctrine. The Court therefore enters the following order with respect to this Interrogatory: Within fourteen days of the date of this

22

Memorandum and Order, Sprint must amend and supplement its response to Charter

Interrogatory No. 17, incorporating the same four requirements the Court outlined with respect to

Charter Interrogatory No. 15, *supra*.

### D.    Charter Interrogatory No. 18

Interrogatory No. 18 provides:

> Explain and describe with specificity the steps taken by Sprint or its agents to obtain, review, and produce each of the following documents (as well as all family members), including an identification of how, when, and where the native version of each production version was obtained and processed for production, and whether or not any of the document's metadata was deleted or altered at any stage of the collection, review, or production: [list of twenty-five documents].[70]

Again, Sprint made substantially the same objections: (1) overly broad, unduly

burdensome, and seeking information not proportional to the needs of the case; (2) seeks

information that is not relevant; (3) contains multiple, discrete subparts; and (4) is directed at

information protected by the attorney-client privilege and work product doctrine.[71]

Sprint answered,[72] incorporating its response to Bright House's Interrogatory No. 9 and

TWC Interrogatory Nos. 15–16 with respect to the TWC Case. Sprint represented that after

reasonable investigation, Sprint is unaware of any Sprint employee or agent, other than Mr.

Cowden, "who reviewed, was aware of, or discussed the December 13, 2008 Cowden E-mails

and Brighthouse Panel Discussion Presentation prior to August 6, 2019."[73] Sprint also generally

discussed production of the SPRITS documents and re-production of the SPRIKS documents in

---

[70] ECF No. 330-4 at 4–5.
[71] ECF No. 330-8 at 9.
[72] Once again, as discussed *supra*, Sprint's response renders its objections conditional, resulting in a waiver of the objections.
[73] ECF No. 330-8 at 10.

this case. In its response brief to the motion to compel, Sprint represents that "Charter already has the relevant non-privileged factual information responsive to this interrogatory."[74]

Like the other two interrogatories discussed *supra*, Interrogatory No. 18 requests a good deal of relevant information from Sprint that may be difficult to obtain. But, to the extent Sprint can reasonably glean the information, Sprint must make a reasonable effort to do it. Sprint has not supported any of its objections with evidence suggesting how much it would be inconvenienced by the effort. Sprint's objections are overruled, except for possibly the objection based on attorney-client privilege and work product protection.

The Court therefore enters the following order with respect to this Interrogatory: Within fourteen days of the date of this Memorandum and Order, Sprint must amend and supplement its response to Charter Interrogatory No. 18, incorporating the same four requirements the Court outlined with respect to Charter Interrogatory No. 15, *supra*.

### E.    TWC Interrogatory Nos. 17–20 and Charter RFP Nos. 173–175

These discovery requests are characterized as the "Prior Knowledge Discovery" by Corporate Defendants. They concern Sprint's knowledge of the alleged trade secret misappropriation prior to 2019. Each of the subject interrogatories asks Sprint to identify each document and communication (oral or written), dated between November 1, 2008 and August 6, 2019, that "concern[s/ed], mention[s/ed], reflect[s/ed], evidence[s/ed], or allude[s/ed] to any"[75] "awareness of, suspicion of, discovery of, or investigation by Sprint or its agents . . . into any unauthorized acquisition, use, or disclosure of Sprint's confidential information by Defendants"[76] or "potential, planned, or contemplated claim for trade secret misappropriation against . . . any of

---

[74] ECF No. 341 at 12.
[75] ECF No. 330-5 at 12; 15; 17; & 19.
[76] *Id.* at 12; 15.

the Defendants, including without limitation [any Document or . . . Communication concerning] the assertion of, researching of, obtaining discovery into, or performing other investigation of a claim of trade secret misappropriation . . . ."[77] The RFPs request the corresponding documents and communications.

Sprint made the same objections it made to the other Interrogatories addressed in this Memorandum and Order. In this instance, however, Sprint also declined to answer the interrogatories, offering to meet and confer on "narrowing the scope of [the] interrogator[ies]."[78] In its response brief, Sprint argued that the interrogatories "are the very definition of 'fishing expedition,' seeking a broad disclosure of attorney work product and attorney-client privileged documents and communications."[79] And Sprint argued that Corporate Defendants already have all the factual information they need for their statute of limitations defense.[80] Sprint also objected to the RFPs, arguing that the requests are overly broad, unduly burdensome, not proportional to the needs of the case, and subject to privilege.[81] Sprint further responded to the RFPs that some documents have already been produced or are in Corporate Defendants' possession; some will not be produced because they are protected by privilege or other protection; and for some, Sprint is not aware of any responsive documents.

The Court finds that the language used by Corporate Defendants in these discovery requests is overly broad. The Court cannot fathom how Sprint can fashion a reasonable search over ten years for documents reflecting or "alluding" to "any awareness of" or suspicion of unauthorized acquisition, use, or disclosure of Sprint's confidential information. The language is

---

[77] *Id.* at 17; 19–20.
[78] *Id.* at 14; 17; 19; & 20.
[79] ECF No. 341 at 13.
[80] *Id.*
[81] ECF No. 330-7 at 22–26.

simply too broad and is not a request that is proportional to the needs of the case. Sprint's

objections are sustained.

### F.      TWC Interrogatory No. 13 - Damages Interrogatory

Interrogatory No. 13 provides:

> Identify each customer that Sprint contends it lost, or lost business or revenue from, as a result of the alleged trade secret misappropriation alleged in this case, and for each, identify the following facts:
> • Sprint services used by the customer;
> • date on which the customer began using each Sprint service;
> • date on which the customer ceased using each Sprint service;
> • date on which Sprint asserts each customer ceased using Sprint services or reduced its use of Sprint services due to alleged misappropriation;
> • the reason why the customer stopped using Sprint services or reduced its use of Sprint services due to the alleged misappropriation;
> • for each quarter in which the customer was a Sprint customer, the actual costs, revenue, and profits associated with each Sprint service used by the customer;
> • for each quarter remaining in the term of the customer's agreement, the projected costs, revenue, and profits associated with each Sprint service used by the customer;
> • for each quarter for which Sprint claims lost business or revenue, the projected costs, revenue, and profits associated with each Sprint service used by the customer;
> • the persons most knowledgeable about each of the foregoing.[82]

Sprint objected to this interrogatory as overly broad and unduly burdensome, arguing that

it asks for customer information not readily available to Sprint and information Sprint does not

keep in the ordinary course of business.[83] Sprint also complained again about the multiple,

discrete subparts.

---

[82] ECF No. 330-5 at 1–2.
[83] *Id.* at 2.

In answering the interrogatory,[84] Sprint directed Corporate Defendants to its response to Charter Interrogatory No. 4. Corporate Defendants counter that the response to Interrogatory No. 4 is insufficient to respond to much of Interrogatory No. 13.

Sprint's response and supplemental responses to Interrogatory No. 4 answer some—but not all—of the questions posed in Interrogatory No. 13. Interrogatory No. 13 asks about customers other than wholesale VoIP customers. In its answer to Interrogatory No. 4, Sprint represented that it was "unable to identify additional specific customers, beyond Sprint's wholesale VoIP customers identified above, that Sprint at this time contends it lost due to the trade secret misappropriation in this case."[85] If this statement remains true, then there is nothing more for Sprint to disclose about other customers. But if Sprint has dates of service or any information about why customers allegedly stopped or reduced their use of Sprint's services, Sprint shall provide it. Likewise for the financial impact of the allegedly lost business, to the extent Sprint can reasonably ascertain numbers, Sprint's objections to this interrogatory are overruled, except for possibly the objection based on privilege and work-product doctrine.

The Court therefore enters the following order with respect to this Interrogatory: Within fourteen days of the date of this Memorandum and Order, Sprint must amend and supplement its response to TWC Interrogatory No. 13, incorporating the same four requirements the Court outlined with regard to Charter Interrogatory No. 15, *supra*.

**IT IS THEREFORE ORDERED** that Corporate Defendants' Motion to Compel (ECF No. 328) is granted in part and denied in part as set forth in detail herein.

Dated February 28, 2022, at Kansas City, Kansas.

---

[84] As with prior objections addressed in this Memorandum and Order, Sprint's answer results in a waiver of its objections.
[85] *Id*. at 3.

Teresa J. James
U.S. Magistrate Judge